STATE OF MINNESOTA *ex rel.* St. Paul City Railway Company *vs.* DISTRICT · COURT OF RAMSEY COUNTY.

## January 7, 1884.

**Street Railway Track not Assessable as Real Estate.**—A portion of the track of the St. Paul City Railway Company in a public street is not *real estate* within the meaning of *subc.* 7, tit. 1, § 3, of the city charter, (Sp. Laws 1874, *c.* 1,) and therefore not assessable for the expense of paving. .

*Certiorari*, to review a judgment of the district court for Ramsey county, *Brill*, J., presiding, against the relator's track, assessed for a portion of the cost of grading Seventh street in the city of St. Paul.

*H. J. Horn*, for relator.

*W. P. Murray* and *J. B. Brisbin*, for respondent.

BERRY, J.,   The petitioner corporation is possessed of a franchise to lay, maintain, and operate a street railway in the central portion of streets of St. Paul, and by force of the franchise owns and operates all the lines of such railway laid therein, the same comprising a continuous and connected system, embracing the line upon a public street called Seventh street.   To defray the expense of paving that portion of Seventh street lying between Jackson and Locust streets, assessment proceedings were had, in the course of which the sum of

$2,084 was assessed upon "all that part of the St. Paul City Railway Company's street-car track which lies in Seventh street, from Jackson street to Locust street, in the city of St. Paul." Whether the assessment is lawful is the question presented for our determination. Assessments, to defray the expense of the local improvement of street paving, are required to be made upon the real estate benefited thereby or fronting thereon. City Charter, (Sp. Laws 1874, *c.* 1,) *subc.* 7, tit. 1, § 3. But section 24 of the same title provides that "when in case any portions of the cost and expense of making any improvement mentioned in the foregoing section, shall, by virtue of any valid law or ordinance, be chargeable upon any railway company, the amount so chargeable may be assessed upon such railway company, and the balance only upon the real estate benefited thereby; and the city may collect the amount so assessed upon said railway company by distress and sale of personal property, in the manner provided for by the general laws of this state, in the case of taxes levied upon personal property, or by suit brought for that purpose: *provided*, that any real estate belonging to such railway company, and deemed benefited by the said improvement, shall be assessed as in other cases."

The assessment in question is not "*upon the railway company*," under section 24 quoted above, but upon a specified portion of its *track*. Hence, if it is defensible, it is because the track of the company is real estate within the meaning of section 3 above cited. Upon this basis the assessment was made by the board of public works, and sustained by the district court, and upon this basis it is defended here. And, in our opinion, this case may properly turn upon whether the track is or is not real estate, within the meaning of the law under which the assessment is made. Gen. St. 1878, *c.* 4, § 1, enacts that, in the construction of a statute, the words "real estate" shall include lands, tenements, hereditaments, and all rights thereto and interests therein, "unless such construction would be inconsistent with the manifest intent of the legislature, or repugnant to the context of the same statute." Within the first clause of this definition, the petitioner's easement in the streets in which its track is laid would be construed to be real estate, as being a right or interest in the land which constitutes the bed thereof. *Appeal of N. B. & M. R.*

*Co.*, 32 Cal. 499; *People* v. *Cassity*, 46 N. Y. 46. But, in our opinion, the construction is inconsistent with the legislative intent, and repugnant to the context of the statute under which the assessment is made, and therefore not admissible.

In support of this opinion several sections of this statute (Sp. Laws 1874, *c*. 1, *subc*. 7, tit. 1) will now be referred to. Section 36 provides that, at the expiration of the 30 days allowed for the payment of assessments, the city treasurer shall make reports to the district court, and ask for judgment against "*the several lots and parcels of land described*" in his assessment warrants, for the amounts of assessments, interest, and costs due thereon. Upon the filing of the reports, the clerk of the district court is to docket each of them, substantially in the following form, to wit: "*City of St. Paul* v. *Certain Lots of Land.*" Section 38. Upon the hearing of the reports, the district court is to pronounce judgment "*against the several lots and parcels of land described in said reports.*" Section 39. In case of judgment by default, a form of judgment to be entered is prescribed, which, after an appropriate preamble, proceeds as follows: "Therefore, it is considered by the court that judgment be and is hereby entered against *the aforesaid lots and parcels of land,* in favor of the city of St. Paul, for the sum annexed to each lot or parcel of land; * * * and it is ordered by the court that *the several lots and parcels of land,* or so much thereof as shall be sufficient *of each of them* to satisfy the amount of assessment, interest, damages and costs annexed to them *severally,* be sold as the law directs." Section 40. Copies of certain documents are required to be made out by the clerk of the district court, "which shall constitute the process on which *all lands, lots, sublots, pieces and parcels of land* shall be sold for the amount of any assessments," and the city treasurer is authorized "to make sale of *such* lands, lots, pieces, or parcels of land, or other property, upon ten days' notice." Section 41. The city treasurer's advertisement of sale "is to contain a list of the delinquent *lots and parcels of land* to be sold." Section 42; and see, also, section 43. Certificates of sale are to contain a description of "the premises sold," and the sale is to continue "until *all the lots or parcels of land contained*" in the treasurer's precept are sold. Section 44. The pur-

chaser of "any *lot or parcel of land*" is to pay to the treasurer the amount "due *thereon*," and, if no bid shall be made for *any lot* or *parcel of land,* the same shall be struck off to the city. Section 45. Deeds are to be executed of the unredeemed premises *so sold.* Section 47. Deeds upon sales are made *prima facie* evidence (1) that *the land or lot* conveyed was subject to assessment; (3) that "*the land or lot conveyed*" had not been redeemed; and conclusive evidence (1)' that "*the land or lot*" was duly advertised for sale; (2) that "*the land or lot*" was sold for assessments. Section 50. See, also, sections 60 and 66.

From these quotations and references, it is apparent that the *real estate* upon which assessments are authorized to be made, and against which assessment proceedings, culminating in judgments and sales, are authorized to be carried on, consists of "lots and parcels of land," using that expression in its ordinary sense. That a mere easement, such as is the right of the petitioner in the streets in which its track is laid, or the rails, spikes, and timbers which compose its track, are not *lots or parcels of land,* admits of no argument. Neither is its franchise to lay, maintain, and operate its road over the streets, nor such franchise and its track, taken together, a lot or parcel of land. Hence, it appears to follow that a portion of its track in a public street cannot be assessable as *real estate,* to defray the expenses of paving.

This conclusion is confirmed by section 24 before quoted. This provides that where the expense of any improvement shall be chargeable upon any railway company, by virtue of any valid law or ordinance, the amount so chargeable may be assessed upon such railway company, and the balance only upon the real estate benefited, etc., "provided, that any real estate belonging to such railway company, and deemed benefited, * * * shall be assessed as in other cases." The *real estate* of a railroad company is to be assessed *as in other cases.* Now, as there are no provisions for assessing mere easements in other cases, it would appear to follow that easements belonging to railroad companies are not assessable, not being regarded *as real estate;* and the whole section proceeds upon the basis that the company may be chargeable on account of something other than its real

estate, and it is not easy to see what this something can be, unless it be its franchise to lay, maintain and operate its lines of railway in the streets, and its right, under and by force of its franchise, to take and enjoy its easement therein.

Reference was made on behalf of the city to the general tax law for a definition of real property. Gen. St. 1878, c. 11, § 2, enacts that "real property, for the purpose of taxation, shall be construed to include the land itself, * * * and all buildings, structures and improvements, trees or other fixtures of whatsoever kind thereon, and all rights and privileges thereto belonging or in any wise appertaining." This definition is of no value here, for it is a definition "for the purposes of *taxation*," not assessment for local improvements, and this consideration disposes of *People* v. *Cassity, supra,* a case much relied upon by the counsel for the city, which was a case in which the track of a railroad was, for purposes of *taxation*, held to be real property, under a statutory definition similar to our own. Whether the construction given by the court of appeals to this definition would be held correct, as applied to our statute, we have no occasion now to determine. For still another reason, the definition of real property above quoted from our tax law is valueless to support the contention of the city here, because section 11 of the same law expressly declares that the "track" of a street railroad company "*shall be held to be personal property*." Hence, if, for the purposes of this case, any inference is to be drawn from the general tax law, it is that the track assessed is personal property, and not real estate.

Again, if we consider consequences, the great public disadvantage and inconvenience which would result from holding the petitioner's track to be real estate, so that a detached and intermediate portion of it could be sold to satisfy an assessment for a local improvement, demonstrate the extreme improbability that any such rule of law could have been contemplated by the legislature. If such portion can be sold, it can be bought. What does the purchaser get? Not the franchise of the company to operate its road over the portion of the track purchased, for no transfer of this franchise is provided for; and, without express authority from the sovereign, a franchise of this public nature is not transferable. Morawetz on Private Corporations,

§ 536.    And see *Freeman* v. *Minn. & St. Louis Ry. Co.*, 28 Minn. 443.    But if the purchaser gets anything, he must get the company's easement in the street, together with the rails, ties, etc., of the super-structure.    The result would be that, on the one hand, the company's use of the street and of its superstructure would be interrupted, and, on the other, the purchaser would not acquire the franchise to oper-ate what he purchased.    The public, meanwhile, would suffer great inconvenience.    If there could be one interruption of this kind, there could be fifty, and the franchise of the company might be practically destroyed, with no corresponding advantage to the purchaser or to the fund required to defray the expense of the assessment.    The company would be disabled to perform its duties to the public, and the very purpose of its creation would be thwarted.    It would require very clear and explicit legislative expression to justify a construction of the assessment law which would lead to such disastrous and unreason-able consequences.    *Georgia* v. *A. & G. R. Co.*, 3 Woods, 434.

Upon all these considerations, we are confident that the track of the petitioner is not real estate, within the meaning of the assess-ment law, and that therefore the assessment brought up in this case cannot be sustained.    As the case goes off upon a construction of the term "real estate," derived from a particular consideration of the lan-guage of our own statutes, it is not necessary for us to advert very spe-cifically to the authorities cited by the city from other states.    Our examination leads us to the conclusion that, as a general thing, they relate to taxation as distinguished from our species of assessment, or to a mode or principle of assessment differing from ours; and in sev-eral of the more important, it was taxation proper, rather than as-sessment, in our sense, which was upheld.    What we have said dis-poses of the merits of the case, without any necessity for considering other matters argued at the bar and in the briefs of counsel.

The judgment of the district court is reversed and vacated.