## THE STATE EX REL. NEW HAVEN & DERBY RAILROAD COMPANY *vs.* THE RAILROAD COMMISSIONERS.

New Haven Co., June T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, JS.

A provision in the charter of a railroad company that lands may be taken for a railroad, implies that it may be taken for necessary passenger stations and freight depots.

And land that is a part of a highway can be taken, with the approval of the railroad commissioners, as well as any other land.

And it can be taken, with such approval, by a railroad company whose line has been already established, for the purpose of changing the location of its stations, under Gen. Statutes, § 3461.

[Argued June 18th—decided July 20th, 1888.]

APPLICATION to the Superior Court in New Haven County for a mandamus to compel the railroad commissioners to act upon the location by the New Haven & Derby Railroad Company of a new passenger station and freight depot in the city of New Haven. The defendants made answer denying that they had by law jurisdiction to act in the matter, and the case was reserved for the advice of this court. The case is fully stated in the opinion.

*S. E. Baldwin,* for the relator, cited—Gen. Statutes §§ 3460, 3461, 3476, 3479, 3483 ; *City of Norwich* v. *Story,* 25 Conn., 44, 47 ; *Norwich & Worcester R. R. Co.* v. *Town of Killingly,* id., 402, 406 ; *Town of Waterbury* v. *Hartford, Prov. & Fishkill R. R. Co.,* 27 id., 146, 150 ; *State* v. *N. Haven & Northampton Co.,* 45 id., 331, 344 ; *Town of Suffield* v. *N. Haven & Northampton Co.,* 53 id., 367, 370 ; *Commonwealth* v. *Hartford & N. Haven R. R. Co.,* 14 Gray, 379, 380 ; *In re N. York & Harlem R. R. Co.* v. *Kip,* 46 N. York, 546, 552 ; *Milburn* v. *City of Cedar Rapids,* 12 Iowa, 240 ; *City of Clinton* v. *Cedar Rapids & Misso. River R. R. Co.,* 24 id., 455, 469, 477.

*G. M. Woodruff,* for the defendants.

Prior to 1863 there was no way in which a railroad company, after its road had been once located, approved and established, could alter its location or acquire additional lands except by purchase ; but in that year (Acts of 1863, ch. 41, secs. 1, 2,) authority was given, after a line of road had been located, to so far alter the location as to change the curves, straighten and improve lines, width and extent of depot grounds, slopes and embankments, and to extend the lines of sight, and to take the necessary land therefor. And in 1882 (Acts of 1882, ch. 140, sec. 6), the further right was given to take land " for additional tracks, turnouts, and freight and passenger stations and depots." Both these statutes relate to the taking of land by condemnation, and neither in terms authorizes the taking or using of public streets or highways for any of the purposes named; and it may well be doubted whether any such right exists. If such right exists at all, it is solely such as is acquired through the statutes relating to the original construction of railroads. None of these permit the taking or using of public streets or highways for depots or depot grounds ; the right is confined to the construction of the railroad across or upon the highways.

The rights and obligations of railroad companies, as regards the construction of their roads across or upon high-

ways, are defined in sections 3476 and 3480 of the General Statutes, and are essentially the same as conferred by sections 12 and 13, chapter 37, of the acts of 1849. Section 3480 requires that every railroad company which may locate and construct a railroad across any turnpike, highway or public street, shall construct it so as to cross over or under the same, unless the railroad commissioners permit it to be constructed upon a level; but in section 3476 it is provided that in case any highway is so located that the railroad cannot be judiciously constructed across or upon the same without interfering therewith, the company may, with the consent of the commissioners, cause such highway to be altered so that the railroad may be made on the best site for that purpose, but the company must put such highway in as good situation as it was before. It is under this section that the relator claims the right to take possession of the streets within the described limits, and have them discontinued and closed by order of the commissioners. We deny that the section applies to the case under consideration or confers the authority claimed. If the railroad shall hereafter be constructed across these streets, it will cross them practically at right angles, and must be constructed as required by section 3489. The legislature clearly had in mind different conditions to be met by the two sections. To construct a railroad " across or upon " a highway, means something more than to construct it " across " simply. In order that section 3476 should apply there must be a substantial occupation of the highway for some portion of its length, such as will render it impracticable to use the highway in its original location. As expressed by the court in *Norwich & Worcester R. R. Co.* v. *Town of Killingly*, 25 Conn., 402, the railroad must be constructed " upon and along a portion " of the highway in order to authorize a change in the location of the highway. The doctrine of that case governs this, and the case of *Town of Waterbury* v. *Hartford, Prov. & Fishkill R. R. Co.*, 27 Conn., 146, fails to support the claim of the relator, as in that case the railroad completely occupied the site of the highway for the distance of a mile,

and could not have been carried either over or under it. Hence the least important of the roads had to give way and the location of the highway was changed.

If, however, it shall be claimed that an interference with the travel upon a street is the same as an interference with the street itself, we reply that it does not yet appear that there will be hereafter any more interference with travel upon these streets than is now occasioned by the existing tracks. Reasons may be presented to the railroad commissioners sufficient to induce them to forbid the laying of any side track across these streets upon proceedings brought by the city under section 3493; so that neither the streets themselves nor travel upon them will be interfered with.

If the city of New Haven is willing, as is represented, that these streets should be discontinued, let it be done by the city in the usual way; or if hereafter these streets shall come to be so used by the railroad company in connection with the adjoining territory that public safety will require an alteration in the mode of crossing or in the location of the streets, the proceedings necessary to secure such alterations may be had under section 3489, but not at the present time, nor under section 3476, as claimed by the relator.

CARPENTER, J. In December, 1887, the New Haven and Derby Railroad Company was using its railroad in such a manner as to cross Meadow street, in the city of New Haven, with three of its tracks at grade. Across that street a large amount of switching was done. In 1886, by special act of the legislature, (Special Laws, p. 385,) the company was required, either voluntarily or upon proceedings instituted by the railroad commissioners, to take such action as to lessen the switching across the street. With that end in view, the company, in December last, decided to abandon its passenger station and freight depot on Meadow street, and re-locate them at a point considerably west of Meadow street, namely, west of Commerce street and south of Silver street. The site thus selected was crossed at grade by three other streets. The company

decided to extend Silver street so as to accommodate the public travel, and to discontinue so much of the three other streets as interfered with the location selected. This location was modified so as to reserve to the city the right to maintain its sewers, and to require the company, at its own expense, to construct and maintain a bridge, for foot passengers only, over the site along one of the streets.

On January 18th, 1888, the railroad commissioners duly approved of the abandonment of the depots at Meadow street, and on the 23d day of May following they approved of the new site selected, except so far as the location involved the discontinuance of the streets ; and in respect to that matter the finding and order are as follows :—" As to the discontinuance and change of Hill, Lafayette and Liberty streets, asked for in said petition, we are of the opinion that if the premises above described are to be condemned and used for the purposes designated in said petition, it will be unsafe to use the said streets as they now exist at grade. Still, we think that under this proceeding we have no authority to order the discontinuance and changes asked for in the petition, and therefore decline so to do."

This suit is an application for a mandamus to require the commissioners to act upon the matter of the discontinuance of the streets.

The defendants admit all allegations of matters of fact to be true, but deny that they have by law jurisdiction to proceed and render judgment in the matter. The case is reserved for the advice of this court.

The question seems to be this :—Can the railroad company take the land used for streets for depots or depot grounds? If it can, it will be conceded that the commissioners have jurisdiction to approve or disapprove of such taking, and that it is their duty to do so.

The company was chartered in 1864, with such powers as were granted to railroad companies by the public act of 1849. That act, as found in the present revision in section 3460, authorizes the company to lay out its road not exceeding six rods wide, and for the purpose of cuttings, embank-

ments, and procuring stone and gravel, and for necessary turnouts, to take as much more real estate as may be necessary. Section 3476 relates specifically to the matter of highways, and is as follows :—"When it shall be necessary for the construction of a railroad to intersect or cross any water-course not navigable, or any public highway, the railroad company may construct said railroad across or upon the same if the railroad commissioners shall judge it necessary; but said company shall restore said water-course or highway thus intersected to its former state, or in a sufficient manner not to impair its usefulness ; and in case any highway is so located that said railroad cannot be judiciously constructed across or upon the same without interfering therewith, said company may, with the consent of said commissioners, cause said highway to be changed or altered, so that said railroad may be made on the best site for that purpose ; but said company shall put such highway in as good situation and repair as it was previous to such alteration under the direction of said commissioners, whose determination thereon shall be final."

The defendants contend that this section, even in locating the road originally, does not authorize the company to take the streets for depot buildings. That depends upon what is meant by a "railroad." What is it? Is it simply the tracks from one terminus to another? Or does it embrace cuttings, embankments, side tracks and depot buildings ? Depots for passengers and freight are essential parts of railroads. A railroad is incomplete without them. It is doubtless true that in speaking of the several parts of a railroad we distinguish between the main tracks, side tracks or turnouts, and depots ; but when we speak of a railroad from one place to another, we use the word in a comprehensive sense as embracing all these, and mean by it, so far as real estate is concerned, all the land and buildings owned by the corporation and necessary or convenient for the transaction of its business. It seems to us therefore that a reasonable construction of the statute would authorize the company, with the consent of the commissioners, to take streets for depots

as well as for its tracks, if this was a proceeding in the original location and construction of the road.

But this is a proceeding designed to effect some changes and improvements in the terminal facilities of an existing railroad, and may properly be regarded as an alteration of the line of a road which has been "located, approved and established." The statute specially applicable to such a case is section 3461, and is as follows:—

" Every railroad company, after its line of road shall have been located, approved, and established, may so far alter the location of such road as to change the radius of its curves, straighten and improve its lines, width, and extent of depot grounds, slopes and embankments, and extend its lines of sight, when such changes are approved by the railroad commissioners, and may take lands for additional tracks, turnouts, and freight and passenger stations and depots; also for the purpose of supplying water for the use of its engines and stations," etc.

In behalf of the railroad company it is contended that this section authorizes the taking of portions of these streets for the purposes mentioned. The defendants deny this, and claim that it relates solely to the taking of land by condemnation, and does not in terms authorize the taking or using of public streets for any of the purposes named.

It is true this section does not use the word "street" or "highway," but the word "lands" is comprehensive and may include everything that may be classed as real estate. A highway or street is a public easement in land. It attaches to it and cannot exist separated from it; so that t is in fact a part of the realty. When the statute authorizes the taking of land, unless there is something indicating a contrary intent, it authorizes the taking of all the incidents and appurtenances of land. All buildings and other improvements, all rights and privileges issuing out of land, whether private or public, may be taken, always provided due compensation shall be made to parties injured.

When the statute uses the word "land" in granting to a railroad company the power to exercise the right of emi-

nent domain, it will be presumed to use it in its comprehensive sense as including all interests attached to it or growing out of it; especially is this so if otherwise the rights granted would be inadequate or incomplete. Streets and highways can form no exception to this rule, because other statutes, *in pari materia*, expressly and by necessary implication confer the power to take and use portions of highways for railroad purposes, substituting other highways if need be for those thus used, ample provision being made for protecting the rights of the public through the action of the railroad commissioners. Those statutes afford ample proof that the legislature intended, not only that the tracks of the railroad might be laid on the best site for the benefit of the company, but also that depots should be placed in the best locations for the benefit of the public, and that neither of these intentions should be defeated by the existence of highways. Both intentions are designed to promote the public welfare ; the latter especially and more directly.

Depots are frequently if not generally located in thickly settled portions of cities, towns and villages. In giving them the best locations it must sometimes happen that portions of streets will be so interfered with that discontinuance becomes necessary. It is in the interests of the public that those whose duty it is to locate them should have power to select the best locations.

In conclusion, we think the company has the power, subject to the approval of the commissioners, to take the premises in question for the purposes named, and that the defendants have jurisdiction, and that it is their duty, to approve or disapprove of the location as the needs of the public may require.

In this opinion the other judges concurred.