THE FARMERS' LOAN & TRUST COMPANY AND ANOTHER
*vs.* THE BOROUGH OF ANSONIA.

New Haven & Fairfield Cos., April T., 1891. ANDREWS, C. J., CARPEN-
TENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

A horse railroad company, whose track ran through the main street of a
borough, was required by its charter to keep in repair the part of the
street occupied by its track and two feet on each side; and the charter
of the borough provided that, upon any street being improved, certain
officials of the borough should have power to determine what "land
and buildings" would be specially benefited by the improvement, and
to assess the persons interested in such land or buildings such part as
they should judge reasonable of its cost. The company neglecting to
keep in repair its part of the street, the borough, in paving the street
with blocks of stone, paved about fifteen hundred feet of the space
that the company was bound to repair, at a cost of $1,992. In making
an assessment on the "land and buildings" specially benefited by the
improvement, the city officials, and afterwards a committee appointed
by the court on appeal, assessed the entire sum on the company.
Held—

1. That the question was to be determined by the provisions of the borough
   charter, and not by those of the charter of the company imposing on
   it the duty of keeping the street in repair.
2. That the question was simply whether the company, through the en-
   hanced value of its "land and buildings," received such a special ben-
   efit as to be liable to be assessed for the improvement.
3. Whether the right of the company to lay its rails in the street and main-
   tain them there so long as permitted by the borough, could be regarded
   as "land and buildings:" *Quære.*
4. That the franchise of the company could not be regarded as covered by
   that term, and that it was not enough that it was increased in value
   by the improvement.
5. That the fact that the improvement had cost a certain sum could not fix
   that as the amount of the assessment, if the company had property
   liable to the assessment, as the legal liability of the company to the bor-
   ough for the money expended for it by the latter, had nothing to do with
   the matter.

[Argued April 21st—decided June 1st, 1891.]

APPLICATION to a judge of the Court of Common Pleas
of New Haven County for a re-assessment of benefits upon
the Birmingham & Ansonia Horse Railroad Company, for a

borough improvement. The application was made by the Farmers' Loan & Trust Company, a mortgagee of the horse railroad, and by Albert F. Sherwood, a receiver of the railroad company. A committee of three freeholders was appointed by the judge to make the re-assessment, who made their report, against the acceptance of which the plaintiffs remonstrated, and the case was reserved upon the remonstrance for the advice of this court. The case is fully stated in the opinion.

*T. E. Russell* and *E. B. Gager*, for the plaintiffs.

1. The property of the railroad company sought to be assessed is not " land and buildings," and therefore not liable to assessment under the borough charter. 1 Hilliard R. Prop., 49 ; 1 Washb. R. Prop., 10, and note 1, on p. 2 ; 3 Kent's Com., 401 ; *Imlay* v. *Union Branch R. R. Co.*, 26 Conn., 249 ; *Elliott* v. *Fair Haven & Westville R. R. Co.*, 32 id., 579 ; *Attorney Gen.* v. *Metropolitan R. R. Co.*, 125 Mass., 515 ; *Eichels* v. *Evansville Street Railway Co.*, 78 Ind., 261 ; *Lehigh Coal & Nav. Co.* v. *Northampton County*, 8 Watts & Serg., 334 ; *Gibbs* v. *Drew*, 16 Fla., 147.

2. The borough had no right to assess the property of the company for the pavement in question. The charter of the company constituted a contract, and its duties are fixed by that contract and limited to repairs of the road-bed. This cannot be stretched to cover paving with granite blocks— an independent improvement. *City of Chicago* v. *Sheldon*, 9 Wall., 50 ; Elliott on Roads & Streets, 595–597.

3. There is nothing in the charter of the borough which authorizes it to do any work which the railroad company was obligated to do and assess the cost of so doing against the specific property of the road. The borough might, perhaps, enforce such a claim by action against the company. If it did not comply with its obligation to repair, there were other ways of enforcing the duty. It might have pursued the same course it had already taken with regard to a half-mile of the same track in the same street and removed it. It might have enjoined the operation or maintenance of the

road unless the repairs were made, or a mandamus or criminal proceeding might possibly have been brought. Elliott on Roads & Streets, 592; Dillon on Mun. Corp., §§ 713, 1037.

*V. Munger*, for the defendant.

1. It is claimed on the other side that the section of the railroad charter which provides for the company keeping its part of the street in repair, constitutes a contract between it and the borough covering the whole ground of the company's liability in reference to the street. But the borough did not make an order that the company should repair the street; nor does it now claim the cost of the repairs as something for which the company would be liable because it did not obey the order. It made the improvement as it would have made any other, and is now, as in all other cases, only assessing the company for the benefit it received. The persistent refusal of the company to repair made the action of the borough necessary. And the repairs were made with the full knowledge and acquiescence of the company, as also of the receiver. This brings the question clearly within the case of *City of New Haven* v. *Fair Haven & Westville Railroad Co.*, 38 Conn., 422, where it was held "that the defendants, having suffered the city to make the improvements and incur the expense, with full knowledge of the proceedings and without objection, were estopped from setting up the claim that their charter required them to pave the road covered by their charter at their own expense." The charter of the city of New Haven is, at this point, almost identical with that of the borough. See also Elliott on Roads & Streets, 421.

2. The committee find that the property of the railroad company has been benefited to the amount assessed upon it. They say: "Your committe find that the value of the franchise of the road was materially increased by the laying of said pavement, inasmuch as it relieved the owners of said franchise of the obligation attendant upon the same of keeping the roadway between the rails of the track and a space

of two feet in width on each side of said track in good and sufficient repair." And "that the value of the franchise of said railroad was increased in value by the amount of said assessment, namely, $1,992.79." If it should be claimed that the committee ought not to have included the franchise as property specially benefited, then I submit that in so doing the committee did just what was proper. The question is not whether the *amount* of the assessment was correct, but whether it was right to include the franchise as property benefited. This is no longer an open question. A franchise is property liable to assessment for benefits. This court so decided in the case of *City of New Haven* v. *Fair Haven & Westville R. R. Co.*, 38 Conn., 422. See also *Chicago City Railway Co.* v. *City of Chicago*, 90 Ill., 573; *City of Chicago* v. *Baer*, 41 id., 306; *North Beach R. R. Co.'s Appeal*, 32 Cal., 512; *People* v. *Cassidy*, 46 N. York, 46; *People* v. *Commissioners of Taxes*, 82 id., 459; *Morgan* v. *Louisiana*, 93 U. S. R., 27; Elliott on Roads & Streets, 595; Welty on Assessment, 361. If it be contended that the franchise cannot be land, and that nothing can be assessed but "land and buildings," then we say that if a franchise is not land, yet the property obtained by means of the franchise may be so. The right of the company in its track and in the part of the street which it occupies is land. If what is literally land is procured in the exercise of its franchise, it does not cease to be land because purchased by power given by its charter. In *City of New Haven* v. *Fair Haven & Westville R. R. Co.*, above referred to, the court say:—" The defendants' property consists in part of rails, sleepers, ties and spikes, so laid into and attached to the soil in the street where the improvement was made as to become a part of the realty. That property so situated is real estate has been repeatedly decided."

3. It does not affect the case that active operation of the railroad company had ceased. In fact the receiver was operating the road when the assessment was made and did for six months after. When the re-assessment was made, it was properly made in view of the case as it stood at the

time of the original assessment. *Jones* v. *City of Boston*, 104 Mass., 464 ; *Boston Seaman's Friend So*. v. *City of Boston*, 116 id., 181 ; *Douglass* v. *City of Cincinnati*, 29 Ohio St., 165 ; *City of St Louis* v. *Meier*, 77 Misso., 13 ; *Keith* v. *City of Philadelphia*, 27 Eng. & Am. Corp. Cases, 93 ; *City of Cincinnati* v. *Seasongood*, id., 168. Want of funds is no excuse for a neglect of corporate duty. Elliott on Roads & Streets, 33, and cases cited in note 5.

LOOMIS, J. This is a complaint in the nature of an appeal from the doings of the warden and burgesses of the borough of Ansonia in the assessment of benefits against certain property of the Birmingham & Ansonia Horse Railroad Company.

The proceeding is brought by the Farmers' Loan & Trust Company, as trustee under a mortgage of the road and franchises of the company to secure the bondholders, and also in favor of one A. F. Sherwood as receiver appointed in July, 1888, in the course of foreclosure proceedings, and who thereupon took possession and operated the railroad as receiver until October, 1889, when it was sold by him to the president of the Derby Horse Railroad Company for $7,000, and its operation was suspended.

The present complaint or appeal was made to a judge of the Court of Common Pleas for the county of New Haven, who appointed a committee to hear the case, report the facts and re-assess the benefits. Upon the report of the committee a remonstrance was filed in behalf of the plaintiffs against the acceptance of the report, and the questions arising thereon were reserved for the advice of this court.

The Birmingham & Ansonia Horse Railroad was constructed and commenced operations in the year 1887, with a track three and a half miles long, running from a point in the village of Derby through a portion of the borough of Birmingham, and to a point on Main street in the borough of Ansonia. Under section ten of its charter the railroad company was required to conform to the orders and regulations made respectively by the boroughs of Birmingham and Ansonia and the selectmen of the town of Derby, as might

be required, for the paving and grading of the streets through which the road was laid, and "to keep the horse path between the rails of said track and a space of two feet in width on each side of said track, on said highways and bridges, in good and sufficient repair, without expense to said town or to either of said boroughs."

A portion of Main street in the borough of Ansonia was occupied by two railroad tracks. That of the Derby Horse Railroad Company occupied the centre of the street, and four feet easterly of this track was the track of the railroad in question. In consequence of the two railroad tracks and the constant use of the street for the transportation of very heavy loads it was found impossible, without great expenditure of time and money, to keep the railroad tracks at grade with the surface of the street, so that the street was in fact often left in a dangerous condition through the neglect of this railroad company to keep the same in repair as required by its charter.

For these reasons, during the winter of 1888–9, the borough of Ansonia caused a pavement of Belgian blocks to be laid through Main street, including fourteen hundred and ninety-two feet of the street occupied by the track of the railroad company; and on the 23d of April, 1889, caused an assessment for benefits to be made against the company of $1,992.79 being the actual cost of the pavement between the rails for the distance mentioned.

The committee in re-assessing the benefits adopted the same sum, but their mode of reaching this result will appear by the following extract from their supplemental report:—

"3. That at the time said paving assessment was made said railroad was being run by said receiver at a loss, the expenses exceeding the receipts by from $200 to $300 a month; that the experience of said railroad up to and during the time it was in the hands of said receiver afforded little or no ground for believing that it could ever be profitably run; but that the borough of Ansonia had no knowledge of the financial condition of said road beyond that afforded by the statement of said receiver to the warden of said borough,

that the road was poor, and could not afford to pay for necessary repairs.

" 4. That the counsel for the appellants claimed and offered expert evidence to prove that the market value of said railroad was not increased by the laying of the pavement in question. The defendant offered no evidence upon this point. Your committee find that the value of the franchise of the road was materially increased by the laying of said pavement, inasmuch as it relieved the owner of said franchise of the obligation attendant upon the same of keeping the roadway between the rails of the track and a space of two feet in width on each side of said track in good and sufficient repair. In making their re-assessment your committee assumed that the horse railroad company stood upon a different footing from ordinary landowners, who are assessed according to the special benefits accruing to their land. The horse railroad company was required by its charter to maintain in good and sufficient repair that part of the highway occupied by its track and a space of two feet on each side. The charter of said borough contemplated the payment by said railroad company of its just proportion of the whole cost of said pavement, which your committee find was the most economical and the only practicable way of keeping said street in good and sufficient permanent repair. Your committee find that the assessment against said railroad company rests not so much upon the ground that its property has been enhanced in value as upon the ground that the borough has done certain work that it is legally bound to pay for. Viewed in this light your committee find that the value of the franchise of said railroad was increased in value by the full amount of said assessment, viz.: $1,992.79."

To determine whether the action of the warden and burgesses or of the committee was lawful it will be necessary to see what powers have been conferred on them relative to the assessment of benefits for street improvements. Section 32 of the charter of the borough of Ansonia provides as follows :—

" Whenever any public square, park, street, highway or walk shall be laid out, altered or extended, and whenever any street, highway or walk shall be graded, paved, macadamized or otherwise improved, or shall be discontinued, and whenever any sewer or drain shall be laid out, altered or extended, the damages done to any owner of lands by the taking of the same for public use or by the discontinuance or alteration of any street or highway may be assessed by the warden and burgesses, or by a board of compensation to consist of three residents and electors of said borough to be appointed by the warden and burgesses from time to time and during their pleasure ; and the warden and burgesses, or said board of compensation, shall have power to determine what lands and buildings will be specially benefited by any such improvements, and to apportion among and assess to be paid by the persons interested in such lands or buildings such part as they shall judge reasonable of the damages and cost of such improvement. Before making any such assessment of damages in favor of, or any assessment of benefits against any person, said board of compensation, or said warden and burgesses, shall cause reasonable notice to be given to such person to appear before said board or the warden and burgesses to be heard, if he sees fit, in reference to such proposed assessment, and such notice shall be given in the manner above provided in this section."

And a portion of section 33 provides as follows :—

" All assessments of benefits made under the provisions of the charter of said borough and its amendments and this act, shall be and remain a lien upon property especially benefited by the public work or improvement in view of which such assessments were made, and such liens shall take precedence and priority of all other liens and encumbrances on the property whereon the same is imposed, except taxes due the state ; and the lands, buildings or other property on which such liens may exist shall be liable to be foreclosed in the same manner as if said lien were a mortgage thereon in favor of said borough to secure the amount of said assessments or expenses."

It should be observed at the outset of this discussion that the validity of the proceedings now in question must be determined by the provisions of the borough charter just cited, and not by the railroad charter, which implies a duty respecting the repairs of the street.

This is not a question of the liability of the railroad company in a suit of the borough to enforce the payment of money expended by the latter for repairs of the street which it was the duty of the railroad company to make, but simply a question whether the railroad company, through the enhanced value of its land and buildings consequent upon the improvements made by the borough, received such special benefits as to make it liable therefor. The counsel for the borough approved and adopted the same distinction. But the report of the committee shows that this obligation on the part of the railroad company to repair the street, if it was not wholly misapplied, was at least too influential a factor in the making of the appraisal.

The committee overlooked the fact that their province under the borough charter was simply to find the benefit to the property described, and not to compute the amount that might be saved to the railroad company under its contract obligation to the borough. The latter obligation continued in full force after the improvements as before. To the extent that the new pavement increased the value of the land and buildings of the company, to that extent only were benefits to be assessed.

One contention on the part of the plaintiffs is, that the charter of the railroad company, in the section referred to, constitutes a contract between the railroad company and the borough which covers all liabilities of every kind as between the parties relative to the streets, and excludes all other liabilities than those mentioned, and that the provision in the borough charter relative to the assessment of benefits does not apply to the railroad company.

But the borough charter has all the force of a public act and is declared to be such in section 47. It contains no exception as to persons or corporations to be affected by it. A

railroad company owning land or buildings affected by street improvements is as clearly within the provisions of section 32 as any one can be, and we think there is no conflict between the railroad and the borough charter that cannot be reconciled.

We come then to the controlling questions in the case :— Was the assessment as made valid? Did the railroad company have any such property as is subject to the assessment?

We have already seen that the assessment is restricted to land and buildings, and the first question is whether the right of the railroad company to lay its ties, rails and tracks on the street and maintain them so long as permitted by the town and borough authorities, constitutes the ownership of land and buildings? The plaintiffs contend that it does not, and that the railroad company had no such property as was subject to assessment of benefits under the borough charter.

While the word "land" in a statute, strictly construed, will not include an easement or incorporeal hereditament, yet where it appears to be in accordance with the intention of the legislature it may include all interests attached to and growing out of land.

In *State ex rel. New Haven & Derby R. R. Co.* v. *Railroad Commissioners*, 56 Conn., 308, such a construction was given to the word "land," as used in section 3461 of the General Statutes, granting to a railroad corporation the power to exercise the right of eminent domain, for the very satisfactory reason that the rights granted under the statute would otherwise have been inadequate or incomplete.

In *City of New Haven* v. *Fair Haven & Westville Railroad Company*, 38 Conn., 430, this court said :—" The defendant's property consists in part of rails, sleepers, ties and spikes, so laid into and attached to the soil in the street where the improvement was made as to become a part of the realty. That property so situated is real estate has been repeatedly decided." The charter of the city of New Haven, under which the question arose, provided that the common council might "assess upon the persons whose *property* is specially bene-

fited thereby, a proportional and reasonable part of the expense," etc. The point to be decided was whether the interest of the railroad company was *property*—the most comprehensive term possible. The court decided not only that it was property, but that it belonged to the class known as real estate. But real estate is a larger and more comprehensive term than land, except where the latter is liberally construed. If the right to make the assessment now under consideration had been made dependent upon the ownership of property merely, the question under discussion could not have arisen, and so probably if the narrower term "real property" had been used in the charter.

The former charter of the borough of Ansonia used the word "property" in this connection. For some reason the legislature substituted for the most comprehensive word a term of narrower import, and this furnishes ground for doubt and difference of opinion. But as there is another ground upon which we are all agreed, which is decisive of the present case, we prefer to leave this question undecided.

Assuming then that the word "land" may include any interest in the realty, the committee manifestly erred in three respects:—

1. In omitting to find that the property in question had been enhanced in value by the improvements in the street.

2. In resting the assessment upon the ground that the borough had done certain work which the railroad company, under the provisions of its own charter, was bound to pay for.

3. In placing the assessment as made upon the increased value of the franchise of the railroad corporation.

We have already seen that it was indispensable that the committee find in the street improvement a pecuniary benefit to the described property of the railroad corporation equal to the amount of their appraisal reported. Such an assessment was wholly ignored by the committee. The uncontradicted testimony of experts that the value of the railroad property was not at all increased by the laying of the

pavement in question, though not formally ruled out, seems to have been regarded as immaterial.

Under the borough charter the only property subject to the assessment of benefits, as we have before stated, was "land and buildings," and this term, however comprehensively construed, cannot be held to mean the same as the franchise of the corporation. The two things are as distinct in contemplation of the law as a land tax and a poll tax.

And so far as the committee were influenced by the fact that the borough had done work on the street which the railroad company was bound to pay for, they misconceived the scope of legitimate inquiry, and virtually converted a mere appeal from the doings of the warden and burgesses in the matter of the assessment of benefits, under the borough charter, into an action at law in favor of the borough against the railroad corporation, based on a mere contract obligation.

We advise that the remonstrance against the report of the committee be sustained, and that the report be rejected.

In this opinion the other judges concurred.