(24 App. Div. 489.)

CONWAY v. CITY OF ROCHESTER et al.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1897.)

1. MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — ASSESSMENTS — RAILROADS.

A street-railway corporation, organized under Act 1884, c. 252, as amended by the general railroad law of 1890 (section 98), which provides that every street-railroad corporation shall keep in repair the portion of the street between its tracks and the rails, and two feet in width outside of its tracks, under the supervision of the local authorities, and whenever required by them to do so, and in such manner as they may prescribe, acquired the stock and privileges of another street-railroad corporation organized under the general railroad law of 1850, and for whose benefit Laws 1869, c. 34, § 5, was passed, providing that such corporation should repair the surface of the streets inside the rails of its tracks, but need not make any permanent improvements. Held, that such acquired corporate property was controlled by the laws under which the corporation acquiring the same was organized, so far as improving the streets is concerned.

2. SAME.

A power in a city charter to assess the expenses of repairing a street upon "lots and parcels of land" deemed benefited by the improvement confers no authority to assess the tracks, ties, or franchises of a street-railroad corporation.

**3. SAME.**

    Although a street-railroad corporation is bound by the general railroad law of 1890 (section 98) to make permanent improvements whenever required, and, in case of neglect to comply, the city is authorized to make the repairs at the expense of the company, such statute does not authorize the city to impose an assessment on the company for the expense of repairing a street.

**4. SAME.**

    City assessors have no authority to make assessments except such as the charter confers.

Appeal from special term, Monroe county.

Action by John Conway against the city of Rochester and others to enjoin them from awarding a contract for improving a street, and from making such improvement, and asking that the ordinance under which it is proposed to be made be adjudged illegal and void. From an order dissolving a temporary injunction, plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

John Desmond, for appellant.

A. J. Rodenbeck, for respondents.

GREEN, J. The Rochester City & Brighton Railroad Company was organized and incorporated under the general railroad law of 1850. By an act passed for the relief of such company, it was provided "that the company shall put, keep and maintain the surface of the streets inside the rails of its tracks, in good and thorough repair; but whenever any of said streets are by ordinance or otherwise permanently improved, said company shall not be required to make any part or portion of such improvement, or bear any part of the expense thereof, but it shall make its rails in such street or streets conform to the grade thereof." Laws, 1869, c. 34, § 5. The Rochester Railway Company was organized under Act 1884, c. 252, providing for the construction and operation of street surface railroads. In proceedings taken pursuant to the provisions of sections 78 and 79 of the railroad law (2 Rev. St. [9th Ed.] p. 1291), the latter company became vested with all the capital stock, property, rights, privileges, and franchises of the first-named company, to be held and enjoyed by it as fully and entirely, and without change or diminution, as the same were before held and enjoyed by the Brighton Railroad Company. The obligation to keep the street between the tracks in permanent repair is imposed by section 98 of the railroad law, and that section is made applicable by section 90 to every corporation which has constructed, or shall construct or operate, a street surface railroad, or any extension or branches thereof, and every such corporation must comply with its provisions.

Section 98 is as follows:

"Every street surface railroad corporation so long as it shall continue to use any of its tracks in any street, avenue or public place in any city or village shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in

246    49 NEW YORK SUPPLEMENT    (Sup. Ct.

and 83 New York State Reporter.

width outside of its tracks, under the supervision of the proper local authorities, and whenever required by them so to do and in such manner as they may prescribe. In case of the neglect of any corporation to make pavements or repairs after the expiration of thirty days notice to do so, the local authorities may make the same at the expense of such corporation."

This section is substantially the same, except as to the words "in such manner as they may prescribe," and the words "pavements or," in the second sentence, as the provision of section 9, c. 252, Laws 1884, which was thereby repealed. The act of 1869 is not expressly repealed, and it is contended on behalf of the defendants that, in respect to those streets in which the Brighton Railroad Company had theretofore constructed and operated a railroad, the obligation of the Rochester Railway Company, as its successor, is to be ascertained and measured by section 5 of the act of 1869, and not by section 98 of the railroad law. If that be true, then the consolidated company would be governed in respect of its duty to repair or repave certain streets by the act of 1869, and also by section 98 in respect of other portions of its line. At the time the Rochester Railway Company acquired the franchises of the other company, it was subject to the provisions of section 98, and the duty or obligation thereby imposed must be held to apply to the lines of railroad acquired by the proceedings for consolidation. The provisions of section 79 are controlled and limited by the provisions of section 98, in respect of the lines of railroad so acquired. The provisions of section 90 are all comprehensive, and apply to all corporations, without regard to any special provisions theretofore made in favor of any particular railroad incorporated under the general railroad law of 1850.

It is clear that there is no authority whatever, conferred by any provision of the city charter, to impose any portion of the expense of repairing the street upon the railroad company. A power to assess the expense upon the "lots and parcels of land" deemed benefited by the improvement confers no authority to assess the tracks, ties, etc., or the franchise of a street-railroad company. People v. Gilon, 126 N. Y. 147, 27 N. E. 282; Elwood v. City of Rochester, 43 Hun, 119. If any such power or duty to assess exists, it must be conferred or imposed by some statutory provision dehors the charter. It is true that the company is bound to make permanent repairs whenever required to do so by the city authorities, and, in case of neglect to comply with the notice, the city is authorized to make the repairs at the expense of the company. But that statute does not purport to authorize or require the city, or its assessors, to impose an assessment upon the company for the expense of repaving a street, nor to enlarge or extend the provisions of a city charter in respect to assessments upon "lots or parcels of land," so as to bring within those terms the tracks or the franchises of a street railroad. In other words, it does not purport to place the railroad upon the same footing as abutting owners, and to bring it within the same category, so as to absolutely bind it by the determination of the assessors in respect of the proportion of benefit assessed. The statute does not provide for

any scheme of assessment for local improvements upon any of the property or property rights of the company, but simply authorizes the city to do the work at the expense of the company. No lien upon the company's property is created, nor are any proceedings authorized by which a lien may be created. The duty, and consequent liability, is imposed without regard to any supposed benefit to the company or its property. An abutting owner is assessed for the benefits inuring to his property from the improvement, but that is not the measure or extent of the company's liability, under the statute governing it. The charter is the measure of the authority of the assessors in making assessments upon property for the payment of expenses of street improvements. 126 N. Y. 154, 27 N. E. 282. If the power of making such assessment is not found in the charter, then they do not possess it, for they had no authority on the subject except such as the charter confers upon them. 126 N. Y. 152, 27 N. E. 282. How can the assessors make an assessment upon the tracks, as "lots and parcels of land," and describe them as such in the assessment roll? The assessors, in making such an assessment, could not take into consideration the fact that the duty to keep in permanent repair is imposed upon the company by an independent statute, but, on the contrary, they would be bound to eliminate that circumstance in estimating the proportion of benefit inuring, in their judgment, to the company, irrespective of the statutory obligation. In levying an assessment according to benefits, as commanded by the charter, the amount imposed upon the company may be much more or less than the city would be entitled to recover by action, under the statute, and their determination would be conclusive. 126 N. Y. 156, 157, 27 N. E. 282.

It is difficult to draw a substantial distinction between this case and the decision made in Gilmore v. City of Utica, 121 N. Y. 561, 24 N. E. 1009, where the city charter authorized the common council to require all railroad companies to repave between their tracks, and at least two feet in width on each side thereof, whenever it should deem such repavement necessary. The common council did determine that a repavement of the whole street was necessary, but failed to require the company to repave or to bear any portion of the expense. By the city charter, one-third of the expense of paving was required to be borne by the city, and two-thirds to be assessed on the abutting property. The action was brought to restrain the enforcement of the assessment, and to have it declared illegal and void, upon the ground of the omission to assess the company. The trial court found that the old pavement was worn out, in a very bad and dangerous condition, and a new pavement was necessary. The court held that the abutting owners have no vested right, or claim de jure, that a railroad company shall repave or bear the expense of repaving any portion of the street, and hence the words must have their ordinary meaning, and be construed as permissive only. Referring to the duty imposed by the general railroad law of 1850, requiring railroad companies to restore a street to its former state, so as not unnecessarily to

impair its usefulness, and to keep that portion of the street used by them in a reasonable state of repair, the court remarked that this did not bind the company, whenever the city shall resolve to repave a street, to conform its repairs to the absolute directions and requirements of the council; that in this case, by virtue of that law, this company could not be required to make the asphalt pavement; that "if the company was under some obligation to improve the pavement between and about its tracks, and therefore ought to have borne some portion of the expense of this pavement, the failure of the city to enforce that liability on its part does not render this assessment illegal." There, the city was empowered by its charter to require street railroads to repave, whenever it should deem it necessary. Here, there is nothing of the kind in the charter, but a general law governing all street railroads confers the power upon all cities and villages to require them to place and keep in permanent repair the space between and about the tracks, and no liability arises until after due notice given. The difference is merely formal, and not a substantial one; and in neither case can it be said "that the abutting owners have an absolute, immediate, or vested right which the legislature intended imperatively to provide for in this statute." In City of Binghamton v. Binghamton & P. D. Ry. Co., 61 Hun, 479, 16 N. Y. Supp. 225, the charter of the company required it to keep the surface of the street "in good and proper order and repair." By the city charter, the expense of paving or repaving was directed to be assessed upon the owners according to the frontage rule. By resolution passed, the company was directed to pave within its tracks, and for one foot on the outer side thereof, with asphalt, according to the specifications for the paving of the street on file in the clerk's office. The company refused to comply with this resolution, but offered to pave with wooden blocks. The charter required that one half of the expense of paving a street be assessed upon the abutting owners, and the other half be borne by the city. The street had not at any time prior thereto been paved. The expense of paving between the rails of defendant's tracks was assessed upon the company, and this action was brought to recover the amount ($5,181). The court said that the duty to keep in good repair was continuing, and what would be necessary for that purpose would depend upon the situation at the time the performance of the covenant was called for. A condition of things might be imagined that would call for some kind of paving in order to reasonably perform the duty. "Whether a kind that would amount to a reconstruction of the street would, in any event, be within the agreement, is a matter of some doubt. The necessity of such, to say the least, should be clearly made to appear." That the duty and liability were somewhat similar to the duty imposed by the general railroad act, to restore a street to such a state as not unnecessarily to impair its usefulness,—quoting Gilmore's Case, supra. That there was no proof or finding that the street between the tracks was not in good and proper order and repair, or that this pavement was necessary for that purpose, except as it may be

inferred from the resolutions directing the pavement, but such determination did not, as against the company, presumptively prove the necessity of it.   That it was incumbent on the plaintiff to prove a breach of the duty or agreement, and what expense had been incurred by it, that was reasonably necessary; but the city cannot, by its own declaration, determine the facts, and arbitrarily fix the method of repair.  The court also observed that the city charter did not charge any part of the expense on the company, and its liability was not in any manner affected; from which we infer that no assessment could be imposed upon it.   This decision leads to the logical conclusion that the company is not bound by the determination of the assessors, and, that being so, it must follow that the assessors are not empowered to make such an assessment. Nor, do we conceive, would the city itself be absolutely estopped from enforcing the statutory obligation.   In Farmers' Loan & Trust Co. v. Borough of Ansonia, 61 Conn. 78, 23 Atl. 705, the railroad charter required the company to keep "in good and sufficient repair," without expense to the town or borough.   An assessment was made upon the company for a proportionate part of the expense of a new pavement.   The court held that the validity of an assessment must be determined by the provisions of the borough charter, and not by the railroad charter.   That the question was not as to the liability of the company in a suit by the borough to enforce the payment of money expended for repairs of the street which it was the duty of the company to make, but simply a question whether the company, through the enhanced value of its "lands and buildings" consequent upon the inprovements made by the borough, received such special benefits as to make it liable therefor.   "The committee overlooked the fact that their province, under the borough charter, was simply to find the benefit to the property described, and not to compute the amount that might be saved to the railroad company under its contract obligation to the borough.   The latter obligation continued in full force after the improvements as before.   To the extent that the new pavement increased the value of the land and buildings of the company, to that extent only were benefits to be assessed." That the committee erred "in resting the assessment upon the ground that the borough had done certain work which the railroad company, under the provisions of its own charter, was bound to pay for; and in placing the assessment as made upon the increased value of the franchise of the railroad corporation."   "And, so far as the committee were influenced by the fact that the borough had done work on the street which the railroad company was bound to pay for, they misconceived the scope of legitimate inquiry, and virtually converted a mere appeal from the doings of the warden and burgesses in the matter of the assessment of benefits, under the borough charter, into an action at law in favor of the borough against the railroad corporation, based on a mere contract obligation."

It follows that the order appealed from must be affirmed.   So ordered.  All concur.