Marshall, C. J.
 

 Consideration will first be given to the claim of the railway company that the assessment against it is invalid because it is in no wise benefited by the improvement. If the assessment should be found valid in all other respects, very little difficulty would be encountered in disposing of the question of benefits. Primarily this would be a question of fact, but it is so plain and clear that some benefit must accrue to the railway company by reason of a storm sewer system which will properly care for storm water, and this is a matter of such general and common knowledge, that the courts may well take judicial notice of that fact. The fact that the railway company has found it convenient to construct drain tile on each side of its track, and beneath its track, connecting the same up with the sewer system, establishes beyond controversy that some benefit accrues.
 

 The more important question for consideration relates to the claim that the railway company was not the owner of any lots or lands within the boundaries of the sewer district. The record discloses that the railway company has no tangible property of any kind within the district, except its
 
 *34
 
 tracks, and the construction incident and appurtenant thereto, upon and over certain streets within the district. The company did not own that portion of the streets occupied by its rails, ties and poles, but, on the contrary, occupied the same by virtue of a municipal franchise which became effective February 10, 1902, and which will expire by limitation February 10, 1927. By virtue of that franchise it has the right to construct, operate and maintain a single or double track street railway over all streets. At the time the assessing ordinance was adopted the franchise had nine years to run. The railway company was not given the exclusive right in that portion of the street occupied by its tracks, but, on the contrary, Section 7 of the franchise ordinance provides:
 

 “The city reserves all rights to the streets, alleys and highways except as herein expressly granted, and this ordinance is not intended to grant an exclusive franchise of the streets mentioned, and said city, by its council, reserves the right to grant franchises over the streets mentioned to other persons or companies for like purposes. The city may construct sewers, crossings and any improvements whatever along or across the line of said railroad.”
 

 • Section 8 imposed a condition that the company should grant to any other electric railway entering the city the right and privilege of operating cars over its tracks and using its terminal facilities upon the payment of reasonable charges therefor.
 

 The right to levy the assessment against the railway company in this case depends primarily
 
 *35
 
 upon the power which has been given to municipalities in Ohio by virtue of the provisions of Section 3812, General Code, and secondarily upon the power exercised by the municipality of Greenville pursuant to the authority of Section 3812 in the enactment of the several ordinances pertaining to the construction of this improvement and the assessment for its payment. Section 3812, in its pertinent parts, provides:
 

 “The council of any municipal corporation may assess upon the abutting, adjacent and contiguous or other specially benefited lots or lands in the corporation, any part of the entire cost and expense connected with the improvement of any street * * * by * * # constructing
 
 * * *
 
 sewers * * * which the council may declare conducive to the public health, convenience or welfare.”
 

 Pursuant to this authority, the ordinance declaring the necessity provided that the whole cost, less 20 per cent, and cost of intersections, should be assessed in proportion to benefits upon “the following described lots and lands, to-wit: All lots and lands included within the boundaries set out in ¡Section 2 herein, which said lots and lands are hereby determined to be specially benefited by said improvement.”
 

 It is apparent, therefore, that the Legislature has given to municipalities the power to levy assessment only upon lots and lands, and the city council of Greenville evidently so understood that authority, which fact is shown by its use of the same expression in the ordinance of necessity. When the assessing ordinance was passed on Feb
 
 *36
 
 ruary 24, 1919, practically three years after the first ordinance, hundreds of parcels of real estate were assessed, each and all of which were described as lots and outlots and parts thereof, giving lot numbers in each instance; but the assessment against the Ohio Electric Railway Company did not describe any property, merely stating that an assessment had been levied against the company in the sum of $374.
 

 All legal and formal steps having been followed, so far as the record discloses, the question before this court is one of power in the municipality to levy an assessment upon the character of property owned by the railway company within the. boundaries of the sewer district, and, specifically, it must be determined whether that character of property is included within the term “lots or lands.”
 

 It is not doubted that the rails, ties and poles would become real estate, as fixtures, if attached and annexed to real estate exclusively owned or controlled by the railway company, and it is not doubted that a franchise to operate an electric railway over the streets of a city is property which may be taxed or assessed under authority properly and legally extended for that purpose. It has been seen, however, that the railway company is not the owner of the legal title to any real estate, neither does it have the exclusive beneficial use of any real estate within the sewer district. By virtue of the franchise ordinance, already quoted, the same portion of a street used and occupied by the railway company is open to
 
 *37
 
 concurrent use by pedestrians, vehicles, public busses, gas and water mains, sewers, telephone and telegraph lines, and possibly other utilities and other public uses. It may be assumed that some and possibly all of the utilities named operate in some portions of this district, and it is quite certain that pedestrians and vehicular traffic make use of the streets, and every portion thereof, including that portion occupied by the railway company, and yet the assessment ordinance shows that none of those utilities is being assessed for thi3 improvement. This fact is not important, except that it might reflect upon the uniformity of the rule by which the assessments are levied.
 

 If this case should be decided upon a definition of the expression “lots or lands,” as made by lexicographers, the case could easily be disposed of in favor of the railway company. "We will, however, turn to the decisions of the courts of other states upon this subject.
 

 The Illinois courts have held the franchises and rights of way of railroads upon and over city streets to be assessable for municipal improvements, but assessments in that state have been made under an act of the Legislature authorizing “special assessment upon
 
 property
 
 benefited thereby.” A number of cases decided by the Supreme Court of Illinois have held that such rights of way and franchises are included within the term “property.” The latest expression is found in
 
 Cicero & P. St. Ry. Co.
 
 v.
 
 Chicago,
 
 176 Ill., 501, 52 N. E., 866. This case will be found to contain a review of many earlier decisions of that state. We have
 
 *38
 
 no quarrel with that authority as applied to the term “property.”
 

 The state of New Jersey has also approved similar assessments and for similar reasons.
 
 State, ex rel. P. & H. R. Rd. Co.,
 
 v.
 
 City of Passaic,
 
 54 N. J. Law, 340, 23 Atl., 945.
 

 On the other hand, the decisions of other states are quite uniform to the contrary where the legislative authority applies only to lots, lands, real estate, buildings, and other similar expressions.
 

 In the state of New York the power to assess extends to “lots and parcels of land deemed benefited.” The right to assess tracks, ties, or franchises of street railway companies was therefore denied in
 
 Conway
 
 v.
 
 City of Rochester,
 
 24 App. Div., 489, 49 N. Y. Supp., 244, and
 
 People, ex rel.,
 
 v.
 
 Gilon,
 
 126 N. Y., 147, 27 N. E., 282.
 

 In Minnesota the right is given to assess “lots and parcels of land.” The right to assess a franchise for paving was therefore denied in
 
 State
 
 v.
 
 Ramsey County Dist. Court,
 
 31 Minn., 354, 17 N. W., 954.
 

 The same expression is found in the statutes of Iowa, and the right to assess street railways for paving improvements was denied in
 
 Koons
 
 v.
 
 Lucas,
 
 52 Iowa, 177, 3 N. W., 84.
 

 The city charter of Oshkosh, Wis., gave the right to assess “any lot or lots fronting or abutting on the street.” The right to assess the right of way of a street railway was denied in
 
 Oshkosh City Ry. Co.
 
 v.
 
 Winnebago County,
 
 89 Wis., 435, 61 N. W., 1107.
 

 The Court of Appeals in the instant case upheld the assessment against the Ohio Electric Railway
 
 *39
 
 Company on the authority of
 
 Northern Indiana Rd. Co.
 
 v.
 
 Connelly,
 
 10 Ohio St., 159. The opinion and statement of facts in that case do not make it clearly appear what title the railroad company had in the property assessed. We have therefore taken the trouble to carefully examine the original briefs and records in that case, and are convinced that the railroad company in fact had acquired real estate abutting upon the street by appropriation proceedings, and therefore owned the fee to the land subject to a defeasance in the event the land should cease to be used for railroad purposes. The railroad company had exclusive use of the real estate, but it opposed the assessment because it had no use of or access to the street upon which its property abutted. The railroad crossed the street at right angles 20 feet below the level of the street, and the company had built a bridge at its own expense over its tracks for the use of the public. The railroad contended against the assessment principally on the ground that it received no benefit from the improvement. The assessment was upheld, however, on the theory that the assessment was upon all lands abutting upon the improvement without regard to the use to which the lands were applied. It was apparently the theory of counsel for the railroad that, since no use was being made of the land except as a right of way for a railroad used in public transportation, it should be considered merely as a right of way or easement, and not, in any proper sense, as “lots or lands.” The court disposed of that contention in the following language, at page 167:
 

 
 *40
 
 “We are, however, clearly of the opinion that even if the ground was all in fact covered by the road-bed, it would still be appropriately described upon the tax duplicate as
 
 land
 
 in the possession of the railroad company.”
 

 Applying the converse of that proposition to the instant case, it is very clear that if the railway did not occupy the streets of Greenville there could be no assessment, against that portion of the streets, and it would follow therefore that there could be no assessment against the railway company merely because of its partial use and occupancy of such portion of the street. That case is therefore not an authority in favor of the city of Greenville.
 

 Street railways occupying the streets of Ohio municipalities are uniformly held for payment of the cost of street improvements between their tracks and for a portion of the street immediately outside of the tracks, but this is uniformly stipulated in the ordinance whereby franchises are granted for the use of streets by electric railway companies, and this stipulation, being a condition to the granting of the franchise becomes a part of the contract, and therefore enforceable.
 

 The situation of this case may therefore be briefly summed up as follows:
 

 The Legislature has only given municipalities authority to levy special assessments upon lots or lands. The council of Greenville has only attempted to levy special assessments in this instance upon lots and lands. No lots or lands are described in the assessing ordinance as belonging
 
 *41
 
 to the railway company. The assessment is therefore invalid.
 

 Judgment reversed.
 

 Robinson, Matthias, Day and Allen, JJ., concur.
 

 Wanamaker, J., not participating.