## Case No. 17,445.

### WESTERN UNION TEL. CO. v. ATLANTIC & P. TEL. CO.

[7 Biss. 367.][1]

Circuit Court, D. Indiana. Feb., 1877.

RAILROAD RIGHT OF WAY — EXCLUSIVE USE FOR TELEGRAPH PURPOSES—CONDEMNATION PROCEEDINGS—RECEIVERSHIP.

1. A contract between a railroad company and a telegraph company, that the former will allow no other telegraph company to construct

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

a line along its road, is not inoperative as against public policy.

2. When a railroad is in the possession of a receiver of the United States court, a telegraph company can acquire no title to its right of way by condemnation proceedings in a state court.

[Cited in Ex parte Tyler, 149 U. S. 186, 13 Sup. Ct. 791.]

3. If the receiver ratifies a contract previously made with the company, the rights under such contract are not affected by the foreclosure proceedings.

In equity. Motion to dissolve injunction.

McDonald & Butler, Williams & Thompson, and Harrison, Hines & Miller, for complainants.

Matthews, Ramsey & Matthews and Baker, Hord & Hendricks, for defendants.

DRUMMOND, Circuit Judge. The Ohio & Mississippi Railroad Company executed mortgages upon its line of road in this state, and afterwards a contract was made by the railroad company with the plaintiff, the Western Union Telegraph Company, by which a telegraph line was to be established on the line of railroad, on the terms agreed upon between the parties.

The contract declared that no other telegraph company should establish a telegraph on the line of the railroad. The telegraph line was constructed by the plaintiff under this contract, and it was used for the benefit of the telegraph company, and also for the railroad company, according to the stipulations agreed on. Proceedings of foreclosure were commenced against the railroad company, on the mortgages already mentioned, and a sale took place, and under the sale there was a re-organization, and the name changed to the "Ohio & Mississippi Railway Company," which executed other mortgages upon the road, and default having been made in the payment of interest on those mortgages, a bill was filed in this court for foreclosure, and for the appointment of a receiver. Receivers were accordingly appointed, who took possession of the railway after the foreclosure of the first mortgages. and before the filing of the bill against the Ohio & Mississippi Railway Company. The receivers ratified, confirmed and adopted the contract made between the Western Union Telegraph Company and the Ohio & Mississippi Railroad Company, and seem to have acted upon the theory that the contract was still in force as against the railway company. The Western Union Telegraph Company was not a party to the foreclosure suit which resulted in the re-organization of the Ohio & Mississippi Railway Company.

In this condition of affairs, the Atlantic & Pacific Telegraph Company was organized under the general laws of this state, and was proceeding to construct a telegraph line on the railway of the Ohio & Mississippi Company, in direct competition with the telegraph line of the plaintiff. The receivers seem to have acquiesced in this action of the Atlantic & Pacific Telegraph Company which, it is to be observed, was apparently nothing but an agent of the telegraph company of the same name, of New York, and was organized simply for the purpose of extending the line of the New York company to the Mississippi river.

The Atlantic & Pacific Telegraph Company commenced proceedings in the state court, while the railway was in the possession of the receivers of this court, with a view to condemn the right of way, or any interest which the Western Union Telegraph Company might have had on the line of road of the Ohio & Mississippi Company. This was done without application to or the authority of this court. Thereupon the Western Union Telegraph Company filed a bill in this court on the 28th day of December, 1876, claiming that the defendant company had no right to construct a line of telegraph on the right of way of the Ohio & Mississippi Company, neither had the latter any right to permit such a telegraph line to be constructed, for the reason that it was a violation of the contract which the Ohio & Mississippi Railroad Company had made with the plaintiff.

An injunction was granted by the district judge, and the motion is now made upon answer and affidavits to dissolve the injunction, and to allow the defendant company to go on with its condemnation proceedings in the state court, with the view of constructing its telegraph line on the roadway of the Ohio & Mississippi Company.

In the argument on the part of the defendants, various objections have been taken to the continuance of the injunction, and to the enforcement of the rights of the plaintiff under the contract made with the Ohio & Mississippi Railroad Company. It is said that such a restriction as was contained in the contract for the construction of the telegraph line of the plaintiff, to prevent other lines from being established on the roadway, was in violation of public policy, and therefore inoperative. If the effect of this clause in the contract was to prevent to any considerable extent the construction of competing lines of telegraph between important points, and thus prevent that kind of communication, there might be something in the objection; but it is to be recollected that there are numerous lines of railway between Cincinnati and St. Louis, which are the two important points of communication, and between which the Ohio & Mississippi Railway offers a very direct line of road. And then, while it is true that it is more convenient to construct telegraph lines on railways than on the common highways of the country, or through fields and wood lands, still it is quite possible to construct them otherwise than upon a line of railroad. A telegraph line, for instance, could be constructed immediately and adjoining the roadway of the Ohio & Mississippi Company, but outside its boundaries. And besides, if it were indispensable that another telegraph line should be constructed upon the Ohio & Mississippi Railway, the right of property which the railway company or the Western Union Telegraph Company might have, and with which the other telegraph company would interfere in the construction of its line, might be acquired as stated hereafter by proceedings for condemnation under the laws of the state. For these rea-

sons, therefore, this restriction in the contract cannot be said to be so contrary to public policy as to render that part of the contract between the Western Union Telegraph Company and the Ohio & Mississippi Railroad Company inoperative.

It was objected also that the sale of the road under the foreclosure proceedings put an end to the contract, but, as has already been stated, the purchaser confirmed. ratified and adopted the contract, and so became a party to it, by ratification, and although in one sense it was a different company from that which originally made the contract, still, as it operated the same line of road, the same necessity existed for the use of the telegraph line, and it availed itself of the benefits of that line by ratifying the contract, and it thereby became bound by whatever obligations rested upon its predecessor by that act of ratification and of use. The proceedings which took place in the state court upon the part of the telegraph company of this state to condemn the right of way, or whatever interest the Western Union Telegraph Company had in the right of way of the Ohio & Mississippi Company were inoperative. The property to be affected by these proceedings was in the possession of this court through its officers, the receivers, and that being so, no action could take place in the state court affecting it without the consent first obtained of this court. An application should have been made to the receivers, and they should have come to this court, or the application might have been made directly to this court by the Atlantic & Pacific Telegraph Company for leave to proceed in the state court, and it would then have been a question whether it was proper to grant that leave. No rights therefore have been acquired by the institution of these proceedings in the state court. They must be considered as invalid. the rule being well established in the federal courts that when property is in its possession through its receivers, all proceedings in the state court affecting it. without the authority of the federal court. are invalid. It is not necessary to decide whether this fact would alone have authorized the issuing of the injunction, or, whether existing, it alone would warrant its continuance.

It was also objected that the Western Union Telegraph Company had not complied with the law of the state, of June 17th, 1852, as to foreign corporations doing business in this state, though it had its principal place of business, and an office in Indianapolis. It may be important to ascertain with a view to the future consideration of this question, whether this contract was made in this, or another state, as preliminary merely to the construction of a line of telegraph in this state. There is nothing either in the pleadings or in the proofs to show what the fact may be as to this. and therefore without dissolving the injunction, which we think under the peculiar circumstances may stand for the present. the court will permit the pleadings to be amended in order to show the fact, the truth being, as is said, that the contract was made out of this state. Ordered accordingly.

WESTERN UNION TEL. CO. (BEHM v.). See Case No. 1,234.

WESTERN UNION TEL. CO. (BELUN v.). See Case No. 1,234.

WESTERN UNION TEL. CO. (COLGATE v.). See Cases Nos. 2,994 and 2,995.

WESTERN UNION TEL. CO. (PENSACOLA TEL. CO. v.). See Case No. 10,960.

WESTERN UNION TEL. CO. (STEPHENS & C. TRANSP. CO. v.). See Cases Nos. 13,370 and 13,371.

WESTERN UNION TEL. CO. (STRAUSE v.). See Case No. 13,531.