OREGON SHORT LINE R. CO. v. POSTAL TEL. CABLE CO. OF IDAHO.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1901.)

No. 680.

1. EMINENT DOMAIN—RIGHT TO MAINTAIN CONDEMNATION PROCEEDINGS—LOCAL TELEGRAPH COMPANY.

The fact that a corporation, duly organized under the laws of the state to construct and maintain a telegraph line, is subordinate or auxiliary to a corporation of another state which owns the greater part of its stock and controls its management, or that its stock has not been paid up, does not affect its right to maintain proceedings to condemn right of way for its line, under the statutes of Idaho. Where the plaintiff shows that it is a corporation de facto of the state, the further right to contest its authority to condemn land or to prosecute the objects of its organization belongs to the state alone.

2. SAME—IDAHO STATUTES—USE OF RAILROAD RIGHT OF WAY FOR TELEGRAPH LINE.

The general rule of law that a corporation having general statutory authority to condemn property for a public use may condemn for such use property which is already devoted to another public use, where the second use will not materially interfere with the first, is not changed as to telegraph companies by Rev. St. Idaho, §§ 5210, 5213, the first of

which gives such companies the right to exercise the power of eminent domain, and the second of which provides that before property can be taken for a public use it must be shown that the taking is necessary to such use, and, if already appropriated to some public use, that the second use "is a more necessary public use." Such statute by implication authorizes a second condemnation, and under it a telegraph company may condemn right of way for its line over the right of way of a railroad, where the court finds that it is necessary, that it will not interfere with the use of the property for the purposes of the railroad, and that the second use is more necessary than the first.

**3. SAME—JUDGMENT OF CONDEMNATION—SUFFICIENCY.**

A judgment awarding to a telegraph company right of way for its line over the right of way of a railroad, which designates the height of the poles, the manner of their erection, and the minimum distance they shall be placed from the railroad track, and requires the telegraph company on notice to remove, at its own expense, the poles from any portion of the right of way which may be needed by the railroad company, is not so indefinite as to require revision by an appellate court, and especially where there is no assignment of error directing attention to any particular defect therein.

**4. SAME—ADEQUACY OF DAMAGES AWARDED.**

An award of $500 damages to a railroad company as compensation for right of way for the construction of a telegraph line over its own right of way for a distance of 200 miles, where the court found that such line would not interfere with the operation of its road, and required the telegraph company to remove any of its poles which should at any time so interfere, is not so inadequate that it will be disturbed by an appellate court on a writ of error.

In Error to the Circuit Court of the United States for the Southern Division of the District of Idaho.

For opinion below, see 104 Fed. 623.

The defendant in error instituted condemnation proceedings to condemn to its use, as a right of way for the purpose of constructing and maintaining a telegraph line, a portion of the right of way of the plaintiff in error used and occupied by it for its railroad, extending longitudinally along the line of the railroad through Idaho from the boundary line of Montana, a distance of about 200 miles. In its complaint the defendant in error alleges that the land which it seeks to occupy will be one circular foot five feet deep for each pole to be erected; that it will not attach its wires or fixtures to any of the bridges or structures of the railroad company, and will not erect any of its poles upon any embankment of the company, but will occupy only such portion of the right of way as is not necessary for the use of the railroad company; and promises that, if at any time the railroad company shall need any portion of its right of way where the poles and lines of the telegraph company are situated, the latter will, upon notice, at its own expense remove its poles and wires from such part of the right of way. Upon issue joined and the testimony adduced, the court rendered judgment in favor of the defendant in error, finding that the use to which it proposed to put the property is a public use, authorized by law, and necessary for its use, and a more necessary public use than that to which it was already appropriated, and that the construction and operation of said telegraph line would not diminish the value of the right of way of the railroad company for railroad purposes. Damages were awarded the plaintiff in error in the sum of $500.

Parley L. Williams and Snow & McCamant, for plaintiff in error.
J. R. McIntosh and O. W. Powers, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is urged that the court erred as to fact and law in finding that the defendant in error was a corporation duly and regularly incorporated under the laws of Idaho, and in ruling that the contention that it was organized to enable a foreign corporation to condemn a right of way "cannot be considered in this case." In the answer it was denied that the defendant in error was a corporation incorporated under the laws of Idaho, or that it had the power to exercise the right of eminent domain, and it was alleged that the Postal Telegraph Cable Company, a corporation of New York, in order to circumvent the policy of the state of Idaho which denied the right of foreign corporations to condemn such right of way, caused certain of its employés to organize a nominal and pretended corporation under the laws of Idaho, and that thereupon the defendant in error was incorporated; that it has no separate existence from said New York corporation; that all its expenses are paid and its business policy dictated by the latter; and that the sole purpose of its organization is to enable the New York corporation to exercise in the state of Idaho the right of eminent domain. The evidence is that the defendant in error was incorporated, and a meeting of its incorporators was held, on July 22, 1899, and that on the same day its incorporators became directors and held a meeting; that the directors consisted of four citizens of Idaho, and E. J. Nally, who was a resident of Illinois and an employé of the New York corporation; that a resolution was duly adopted authorizing the construction of a telegraph line substantially as described in the complaint, and authorizing the institution of the present suit; that the capital stock of said corporation is $250,000, divided into 100 shares, of which E. J. Nally subscribed 96 shares, and the other directors 1 share each. It was shown that no money on account of any of these subscriptions had been paid to the treasurer of the defendant in error, and that the business of the corporation had been conducted under the direction of the New York company. There is nothing in these facts to indicate that the defendant in error was not a corporation de facto. It was duly incorporated according to the laws of Idaho. Four of its five incorporators and directors were citizens and residents of that state. Its right to maintain the present suit is not abridged by the fact that the stock subscribed had not been paid for, and that the majority of the stock was owned by another corporation, which conducted its business and controlled its movements. Day v. Telegraph Co., 66 Md. 354, 7 Atl. 608; Lower v. Railroad Co., 59 Iowa, 563, 13 N. W. 718; Kansas & T. Coal Ry. Co. v. Northwestern Coal & Mining Co. (Mo.) 61 S. W. 684, 51 L. R. A. 936; Exchange Bank of Macon v. Macon Const. Co., 97 Ga. 1, 25 S. E. 326, 33 L. R. A. 800. In the case last cited it was held that the fact that "one corporation owns the entire capital stock of another does not vest in the former the legal title to the property of the latter, nor render the two corporations identical; on the contrary, they are separate and distinct legal entities." The plaintiff corporation, in a suit to condemn land to public use, must show its authority to exercise the right of eminent do-

main, and prove that it has strictly complied with the law. The defendant in such a suit may deny that the plaintiff is duly incorporated, and may cast upon it the burden of proving its corporate existence, but, if the latter show that it is a corporation de facto, it is sufficient. The right to further contest its authority to condemn land or to prosecute the objects of its organization belongs only to the state. McAuley v. Railway Co., 83 Ill. 348; National Docks Ry. Co. v. Central R. Co. of New Jersey, 32 N. J. Eq. 755; Railroad Co. v. Miller, 56 Ind. 88; Wellington & P. R. Co. v. Cashie & C. R. Lumber Co., 114 N. C. 690, 19 S. E. 646; Kansas & T. Coal Ry. Co. v. Northwestern Coal & Mining Co. (Mo.) 61 S. W. 684, 51 L. R. A. 936; Peoria & P. Union Ry. Co. v. Peoria & F. Ry. Co., 105 Ill. 110; Chicago & N. W. Ry. Co. v. Chicago & E. R. Co., 112 Ill. 589; Reisner v. Strong, 24 Kan. 410; Turnpike Co. v. Bobb, 88 Ky. 226, 10 S. W. 794; Day v. Telegraph Co., 66 Md. 354, 7 Atl. 608. In the case last cited it was held that foreign corporations, and especially telegraph companies, may do business within the state, and acquire and hold necessary property therein, to enable them to prosecute and conduct their business, and to hold such property in their own names, or in the name of an auxiliary local corporation organized for that purpose. In the case at bar no question is made that the defendant in error holds the title to whatever right has been acquired in the condemnation suit. Although it may be a corporation auxiliary to the New York company, formed for the purpose of acquiring and holding a right of way in Idaho under the laws of that state, to be used as part of a telegraph line which traverses many states, it is nevertheless a distinct corporation. It may at any time assert its right to conduct and manage its own business affairs, and the payment of the subscriptions to its capital stock may be enforced whenever it shall become necessary for the protection of its creditors or for other purposes. The plaintiff in error cites certain cases which it is said lead to a conclusion the reverse of that which we have reached. A case much relied on is Koenig v. Railroad Co., 27 Neb. 699, 43 N. W. 423. The constitution of Nebraska having provided that no foreign corporation shall be entitled to exercise the right of eminent domain, or "to acquire the right of way," etc., unless certain conditions be complied with, it was held in that case that the prohibition to acquire a right of way prevented such a corporation from doing indirectly what it was prevented from doing directly, or, in other words, prevented it from availing itself of the services of another corporation to accomplish the desired result. The suit was brought to obtain an injunction against the foreign corporation. The latter in its answer pleaded and relied upon a right of way acquired in condemnation proceedings "in its behalf," instituted by a certain other railway corporation of the state of Nebraska, and a transfer of such right from the domestic corporation. It was with reference to these facts and to the constitutional prohibition that the language of the opinion was adopted. There is no prohibition in the laws of Idaho against a foreign telegraph company acquiring a right of way in that state, nor has the New York corporation acquired the right of way in the present case. There has been no

transfer of the right of way from the defendant in error. The title remains in that corporation. Other cases are cited which sustain the general propositions which are not here disputed, that in a condemnation proceeding corporate organization is an issuable fact, that the condemnor must show that the condemnation sought is for public purposes, and that the court may go behind the allegations of the complaint, and try the question whether the real purpose of the condemnation is private or public.

It is said that the court erred in ruling that property already condemned to a public use under the right of eminent domain cannot, in the absence of express legislative authority, be condemned to a second public use; that the judgment in the first condemnation proceeding is an adjudication of the question of the necessity of that use, and that no second judgment can be had subversive of the judgment so rendered. Attention is directed to the fact that, while in some states special provision is made by statute for the condemnation of a right of way for a telegraph line over and along the line of the right of way of a railway company, no such special provision has been enacted in Idaho, and it is urged that there is no provision of law by which the present proceedings may be sustained. So far as the question of special statutory authority is involved, the contention is well founded. The only special statute conferring upon telegraph and telephone companies the right to occupy property already devoted to public use is found in section 2700 of the Revised Statutes of Idaho, which gives permission to construct telegraph and telephone lines along and upon public roads and highways which cross the lands and waters of the state. But, by section 5210, telegraph companies are given the authority to exercise the right of eminent domain. This provision, standing alone, unaffected by other statutory enactments, would confer upon a telegraph company the authority to condemn a right of way along and upon the right of way of a railway company, provided that it did not in any way interfere with the use to which the right of way was already dedicated. The rule is supported by abundant authority, and may be thus expressed: Property dedicated to a public use cannot be taken for another public use under the general laws conferring the right of eminent domain, where the second use will destroy or injure the use to which the property is already devoted. To authorize a second condemnation of such properties to a second use which is subversive of the first, there must be express legislative authority. Mills, Em. Dom. §§ 45–47; Baltimore & O. R. Co. v. Pittsburg, W. & K. R. Co., 17 W. Va. 812–852; Lewis, Em. Dom. § 269; Steele v. Empsom, 142 Ind. 397–406, 41 N. E. 822; Winona & St. P. R. Co. v. City of Watertown (S. D.) 56 N. W. 1077; Baltimore & O. S. W. R. Co. v. Board of Com'rs of Jackson Co. (Ind. Sup.) 58 N. E. 837; Sabine & E. T. R. Co. v. Gulf & I. R. Co. (Tex. Sup.) 46 S. W. 784; Northwestern Tel. Exch. Co. v. Chicago, M. & St. P. R. Co. (Minn.) 79 N. W. 315–317. In the case last cited, the court said:

"The general rule is that express legislative authority is generally requisite except where the proposed appropriation would not destroy or greatly injure the franchise, or render it difficult to prosecute the object of the franchise.

when a general grant would be sufficient. Land already devoted to another public use cannot be taken under general laws, when the effect would be to extinguish a franchise. If, however, the taking would not materially injure the prior holder, the condemnation may be sustained."

The question in the present case is complicated, however, by the provisions of section 5213 of the Revised Statutes of Idaho, which declares that before property can be taken for a public use it must be shown (1) that the taking is necessary to such use; (2) if already appropriated to some public use, that the public use to which it is so applied "is a more necessary public use." Do these provisions import into the law of the case conditions precedent to the second taking, in addition to those which are imposed by the general rule of law which has been above quoted? We think they do not. Taking the language of the statute, we think it may be fairly construed as a statutory declaration of the general rule of law which would have obtained in the absence of such an enactment. Considering the words used, and the general tenor of the law controlling the devotion of private property to public use, we think the statute was intended to provide that property already devoted to a public use might, whenever deemed necessary for the use of a corporation having the authority to exercise the right of eminent domain, be devoted to a second use, which would not interfere with the first. It was not intended to require that absolute necessity should exist for the devotion of the property to the second use. It was only required that the second use be more necessary than the first use. A corporation, in instituting condemnation proceedings, has the general right to select such property as it shall find necessary for its public use. This right is recognized by the courts. No one can defend against such an appropriation by showing that some other property would serve the use of the corporation equally well. Such property is "necessary" when the corporation asserts that it has placed its line over it and needs it. Property already dedicated to a public use stands upon the same footing as other property, and is subject to condemnation as is other property, provided that the second use shall not interfere with the first. The defendant in error in this case has alleged that this property is necessary for its use, and that it is not necessary for the use of the plaintiff in error. The court has found that these allegations are true, and has found that the second use is more necessary than the first. As we construe the statutes of Idaho, we find no error in that conclusion.

It is contended that the judgment is too indefinite, both as to the right condemned and the property to be taken, to authorize the defendant in error to proceed with the construction of its line. There is no assignment of error which brings this precise point before us for our consideration. The assignment is that the court erred in rendering the judgment for the reason that it is erroneous and contrary to law. This is not sufficient to direct attention to a defect in the judgment consisting in its indefiniteness. Nor do we find that the judgment is so indefinite that to render it was plain error which we should notice in the absence of a specific assignment. The judgment, in general terms, locates the telegraph line with reference to

the roadbed of the road, which may be considered a fixed monument. It declares that the poles for the telegraph line shall be erected upon the right of way; that they shall be 30 feet in length, planted firmly in the ground at a depth of not less than 5 feet, and not nearer the roadbed than 30 feet from the outer edge of the railroad track, or at such points as may be agreed upon, and that where it becomes necessary to cross the track of the railroad the poles shall be of such height as to prevent interference with the operation of the road; and that, if at any time the plaintiff in error shall need any portion of its right of way where the poles are placed, the defendant in error shall, upon reasonable notice, at its own expense, remove the same to such other points as shall be designated by the plaintiff in error. If there were in the record an assignment of error directly challenging the sufficiency of this judgment, we are not prepared to say that it is so indefinite as to require revision at our hands. In the nature of the case, it was impracticable to designate the precise spot where each telegraph pole should be placed. The judgment advises the railroad company, in a general way, of the position of the proposed telegraph line, and conserves its remedy against invasion of any portion thereof which it may need for the operation of its road.

It is further contended that the court erred in assessing damages. The damages awarded were $500. When we consider the cost and trouble to the railroad company in obtaining its right of way in the first instance, and the advantage to the telegraph company of locating its line on that right of way rather than on adjacent lands parallel thereto, where it would be required to deal with numerous landowners, and perhaps to prosecute numerous condemnation suits, the amount awarded may appear inadequate; but when it is considered that the property taken for the telegraph line is of no actual value to the railroad company, and, as the court has found, is not needed by it for the operation of its road, the damages found by the court may not be said to be inappropriate. The principal element of damage to the railroad company consists, perhaps, in the trouble and expense to be hereafter incurred by it in causing changes of the position of the telegraph line in case the company shall require more of its roadbed or make changes in the location of portions of its road. We cannot say that the trial court overlooked any of these considerations in awarding damages, or was guided by any erroneous view of the law in arriving at his conclusion. Such being the case, the finding of the court upon the amount of damages cannot be disturbed upon the writ of error. We find no error for which the judgment should be reversed.

The judgment is affirmed.