## POSTAL TELEGRAPH-CABLE COMPANY OF INDIANA v. CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY ET AL.

[No. 3,725.  Filed March 31, 1903.]

TELEGRAPH COMPANIES.—*Eminent Domain.*—Section 5501 Burns 1901, giving telegraph companies "power to acquire such real estate and right of way as may be necessary for the uses and purposes herein contemplated, under the writ of assessment of damages, as fully as if the act in relation to said writ were incorporated and made a part hereof," gives a telegraph company the right to condemn land for its right of way upon the assessment and payment of damages, and adopts so much of the act for the assessment of damages as is necessary to enable the company to exercise such power. *pp. 657, 658.*

SAME.—*Eminent Domain.*—*Railroads.*—The federal statute, §5263 R. S. U. S., authorizing telegraph companies to construct and maintain lines over post-roads of the United States, aided by §5501 Burns 1901, conferring upon such companies the right of eminent domain, authorizes a telegraph company, incorporated under the laws of this State, to acquire a right of way along and over a railroad right of way, such uses not being inconsistent. *pp. 657-662.*

From Lake Circuit Court; *J. H. Gillett*, Judge.

Proceeding by the Postal Telegraph-Cable Company against the Chicago, Indianapolis & Louisville Railway Company and others to acquire an easement over the right of way of defendants. From a judgment for defendants, plaintiff appeals. *Reversed.*

*Loesch Bros. & Howell, Allen Zollars, C. H. Worden* and *F. E. Zollars*, for appellant.

*E. C. Field, H. D. Estabrook* and *J. B. Peterson*, for appellees.

HENLEY, J.—Appellant commenced this action by filing in the Lake Circuit Court its application and petition by which it is seeking to acquire an easement over the right of way of the appellee railway company from the Indiana state line, near Hammond, to the town of Monticello, in

White county, for the purpose of constructing and maintaining a line of telegraph.

The facts stated in the petition and application are in substance as follows: That appellant is a corporation organized under the laws of the State of Indiana, giving it power to acquire land for the construction of its line of telegraph by condemnation or otherwise; that appellant has accepted the acts of congress passed in relation to telegraph companies, and that under the laws of the United States the railway of appellee is a post-road, over which the appellant, as a telegraph company, has a right to construct its lines; that the appellee railway company owns a right of way from the Indiana state line, near Hammond, to the town of Monticello, in White county, which right of way, with the exception of about two miles near Cedar lake, is 100 feet wide, and that the two miles above referred to is twenty-five feet wide; that appellant desires to construct its line upon the said right of way, by the erection of poles about 150 feet apart, which poles are to be set at a distance of four feet from the easterly line of the right of way; that the easterly side of said right of way is not occupied by any telegraph company or any railroad track or anything else, and that the construction, maintenance, and operation of the telegraph line, as proposed, will not interfere in any way with the operation of said railway, or the travel thereon, nor in any way injure the franchises of the railway company, nor render it in any way more difficult to prosecute the object of its franchise, nor will it in any way interfere with the use of said right of way by the railway company, and that it is necessary in the construction and operation of appellant's line to place the poles and wires as proposed; that there is a public necessity for such construction, and that no damage will result to the railway company or the mortgagees; that the Western Union Telegraph Company has a line of poles on the westerly side of said right of way, and is there maintaining and operating a line of telegraph under

an agreement with the said railway company that no other line of telegraph shall be constructed or operated upon the said right of way, and that by reason of such agreement the said railway company has refused to allow appellant to construct its line upon its right of way as proposed; that, under and by virtue of certain acts of congress and of this State, appellant has a right to construct its line of telegraph upon the right of way of appellee. These other statements also appear in the complaint: "This complainant and plaintiff hereby agreeing that the final order and judgment may be so made and rendered that if at any time the space occupied by its poles and wires shall become necessary for the purpose of additional tracks or other structures, or for excavations for repairs of the railway, the plaintiff's poles and wires, upon notice to it by said railway company, may be removed and placed at such other points and places upon the *defendant's* right of way as said defendant railway company and this plaintiff may agree upon, such removal to be at the expense of this plaintiff."

Upon the filing of such application an order was made by the court directing the clerk to issue a writ to the sheriff, requiring him to select a jury of six in number to assess damages. The writ was issued and delivered to the sheriff, who selected a jury and gave notice to all parties concerned. The jury met, went over the line as described in the petition, and assessed the damages; and thereupon the sheriff returned the writ, stating in his return all the acts done by himself and the jury, and including the verdict of the jury. Appellees filed their exceptions to the order of the court authorizing the selection of jurors, and to the appraisement and findings of the jury. Appellant filed a demurrer to each of the first, third, fourth, fifth, eighth, ninth, and thirteenth exceptions. This demurrer the trial court overruled on the ground that the application of appellant was insufficient, and carried the demurrer back and sustained it to the application. This ruling, having been excepted to

by appellant, presents the question to be decided by this court.

The act of congress referred to in appellant's petition is as follows: "Any telegraph company now organized, or which may hereafter be organized, under the laws of any state, shall have the right to construct, maintain and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post-roads of the United States which have been or may hereafter be declared such by law, and over, under, or across the navigable streams or waters of the United States; but such lines of telegraph shall be so constructed and maintained as not to obstruct the navigation of such streams and waters, or interfere with the ordinary travel on such military or post-roads." §5263 R. S. U. S. (2d ed.), 1878. "Before any telegraph company shall exercise any of the powers or privileges conferred by law such company shall file their written acceptance with the Postmaster-General of the restrictions and obligations required by law." §5268 R. S. U. S. (2d ed.), 1878. It is also provided by an act of congress, that: "The following are established as post-roads: All the waters of the United States, during the time the mail is carried thereon. All railroads or parts of railroads which are now or hereafter may be in operation." §3964 R. S. U. S. (2d ed.), 1878.

In the law of this State, under which the appellant was incorporated, it is provided that telegraph companies "shall have power to acquire, by purchase or otherwise, hold and convey such real and personal estate as may be necessary and proper for the purpose of erecting and keeping in repair its lines of telegraph and the buildings requisite for their operation. * * * Such corporation shall have power to acquire such real estate and rights of way as may be necessary for the uses and purposes herein contemplated, under

the writ of assessment of damages, as fully as if the act in relation to said writ were incorporated and made part hereof." §5501 Burns 1901.

We think the law of this State gives to telegraph companies the right and power to condemn land for its right of way upon the assessment and payment of damages, and that the reference in the law above quoted to the act for the assessment of damages adopts so much of that act as is necessary to enable the telegraph company to exercise such power.

The trial court in this case seems to have based its judgment upon the proposition that property already taken for a public use under the right of eminent domain, can not, in the absence of express legislative authority, be taken for a second public use; and in the able written opinion delivered by the trial judge, which is made a part of appellees' brief, it seems the court relied upon the case of *Baltimore, etc., R. Co.* v. *North,* 103 Ind. 486. The case cited sustains appellees' contention in this regard, but the Supreme Court, in *Baltimore, etc., R. Co.* v. *Board, etc.,* 156 Ind. 260, expressly overruled the North case, upon the proposition which appellees' contention would necessarily lead them to. It seems to be the settled law, as announced by the decisions in this State, that if land is once appropriated, by virtue of the doctrine of eminent domain, for an important public use, it can not again be appropriated for another public use, which is wholly inconsistent with the former, and which would supersede or destroy the former use, unless the right to subject the land to a second appropriation is authorized by an act of the legislature. *Baltimore, etc., R. Co.* v. *Board, etc., supra; Gold* v. *Pittsburgh, etc., R. Co.,* 153 Ind. 232; *City of Terre Haute* v. *Evansville, etc., R. Co.,* 149 Ind. 174, 37 L. R. A. 189; *City of Ft. Wayne* v. *Lake Shore, etc., R. Co.,* 132 Ind. 558, 18 L. R. A. 367, 32 Am. St. 277.

The great weight of authority sustains the rule adopted in this State. In *Oregon, etc., R. Co. v. Postal Tel. Cable Co.,* 111 Fed. 842, 49 C. C. A. 663,—a case very similar to the one under consideration,—it is said: "Attention is directed to the fact that, while in some states special provision is made by statute for the condemnation of a right of way for a telegraph line over and along the line of the right of way of a railway company, no such special provision has been enacted in Idaho, and it is urged that there is no provision of the law by which the present proceedings may be sustained. *So far as the question of special statutory authority is involved,* the contention is well founded. The only special statute conferring upon telegraph and telephone companies the right to occupy property already devoted to public use is found in §2700 of the revised statutes of Idaho, which gives permission to construct telegraph and telephone lines along and upon public roads and highways which cross the lands and waters of the state. But, by §5210, telegraph companies are given the authority to exercise the right of eminent domain. *This provision, standing alone, unaffected by other statutory enactments, would confer upon a telegraph company the authority to condemn a right of way along and upon the right of way of a railway company, provided it did not in any way interfere with the use to which the right of way was already dedicated.* The rule is supported by abundant authority, and may be thus expressed: Property dedicated to a public use can not be taken for another public use under the general laws conferring the right of eminent domain, when the second use will destroy or injure the use to which the property is already devoted."

The following cases unequivocally sustain the rule as here announced: Mills, Eminent Domain (2d ed.), §§45, 47; *Baltimore, etc., R. Co. v. Pittsburgh, etc., R. Co.,* 17 W. Va. 812; Lewis, Eminent Domain (2d ed.), §269; *Winona, etc., R. Co. v. City of Watertown,* 4 S. D. 323, 56 N. W.

1077; *Sabine, etc., R. Co.* v. *Gulf, etc., R. Co.,* 92 Tex. 162, 46 S. W. 784; *Northwestern, etc., Co.* v. *Chicago, etc., R. Co.,* 76 Minn. 334, 79 N. W. 315; *State, etc., Turnpike Co.* v. *American, etc., News Co.,* 43 N. J. L. 381; Croswell, Electricity, §121; *St. Louis, etc.; R. Co.* v. *Postal Tel. Co.,* 173 Ill. 508, 51 N. E. 382. These authorities, together with the recent cases in our own State, we think squarely hold that under the general grant of authority to condemn, given to telegraph companies, such as is given in this State, the telegraph company may show the nature of the two uses, together with any facts which show that the two uses may coexist,—the latter use without materially interfering with or impairing the first use,—and if the court, upon all the facts, finds that the two uses can coexist, it is the duty of the court to hold that the condemnation may be had under the general grant for the purpose. And while we are not prepared to say that the court should take judicial knowledge of the fact, as a matter of common and general information, that the construction of a telegraph line upon the right of way of a railway company is not an interference or injury to the use to which the property is already devoted, yet, it is true that in most instances where the question has reached the courts it has been held that the two uses were not inconsistent, and the telegraph companies have been permitted to condemn and acquire an easement on and over the right of way of the railway company. *Union Trust Co.* v. *Atchison, etc., R. Co.,* 8 N. M. 327, 43 Pac. 701; *Mobile, etc., R. Co.* v. *Postal Tel. Co.* (Tenn.), 46 S. W. 571, 41 L. R. A. 403; *Postal Tel. Cable Co.* v. *Farmville, etc., R. Co.,* 96 Va. 661, 32 S. E. 468; *Louisville. etc., R. Co.* v. *Postal Tel. Cable Co.,* 68 Miss. 806, 10 South. 74; *St. Louis, etc., R. Co.* v. *Postal Tel. Co.,* 173 Ill. 508, 51 N. E. 382; *Western Union Tel. Co.* v. *American Union Tel. Co.,* 65 Ga. 160, 38 Am. Rep. 781; *Postal Tel. Cable Co.* v. *Cleveland, etc., R. Co.,* 94 Fed. 234; *United States* v. *Union Pac. R. Co.,* 160 U. S. 1, 16 Sup. Ct. 190, 40

L. E. 319; *Western Union Tel. Co.* v. *Atlantic; etc., Tel. Co.,* 7 Biss. 367, Fed. Cas. 17, 445; *Western Union Tel Co.* v. *American Union Tel. Co.,* 9 Biss. 72, Fed. Cas. 17, 444; *Western Union Tel. Co.* v. *Baltimore, etc., Tel. Co.,* 23 Fed. 12; *New Orleans, etc., R. Co.* v. *Southern, etc., Tel. Co.,* 53 Ala. 211.

We do not need to consider the question as to what rights telegraph companies have, under the acts of congress heretofore set out, in states where the right of eminent domain had not been granted to them; but in some of the states where the general right to condemn has been given to telegraph companies it has been held that the right to construct their lines upon the right of way of railway companies was given by the act of congress, and the means of enforcing the right was provided by the state laws. *Postal Tel. Cable Co.* v. *Morgan's, etc., Steamship Co.,* 49 La. Ann. 58, 21 South. 183; Croswell, Electricity, §47; *Postal Tel. Cable Co.* v. *Southern R. Co.,* 89 Fed. 190; *United States* v. *Jones,* 109 U. S. 513, 3 Sup. Ct. 346, 27 L. Ed. 1015.

In the case of *Postal Tel. Cable Co.* v. *Southern R. Co., supra,* the court said upon this subject: "This same right to construct its lines along the right of way of post-roads of the United States is given under the act of congress of 1866 to all telegraph companies accepting the provisions of that act (Rev. St. U. S., §§5263, 5269); and the petitioner is one of the companies which has complied with all the requirements of this act, and has secured its privileges. But, notwithstanding this, before the privilege can be exercised upon lands, the property of private persons or corporations, the consent of such persons must be obtained, or such proceedings must be had as will insure them just compensation. No act of congress can give the right of taking private property for public purposes without first paying just compensation. Const. U. S. Amend. 5. And although §8 of article 1 gives congress power to establish post-roads, and to make all laws which may be necessary to carry this power into

effect, 'like all other powers granted to congress by the Constitution, the power to regulate commerce is subject to all the limitations imposed by this instrument, among them that of the fifth amendment.' *Monongahela Nav. Co.* v. *United States,* 148 U. S. 325, 13 Sup. Ct. 622. The mode or method of exercising this right of eminent domain is fixed by the laws of the several states. Such mode or method is exclusive in its character in ascertaining the amount of the just compensation to be allowed. See *Roberts* v. *Railroad Co.,* 158 U. S. 1, 15 Sup. Ct. 756; *Sweet* v. *Rechel,* 159 U. S. 380, 16 Sup. Ct. 43. The federal courts do not interfere with it, provided due process of law be furnished. *Chicago, B. & Q. R. Co.* v. *City of Chicago,* 166 U. S. 226, 17 Sup. Ct. 581. This being the case, we must look to the statute law of North Carolina alone for the mode of proceeding in the condemnation of lands or right of way, for the conduct of the procedure, and for the steps by which the just compensation is reached."

We think the law as stated in the case quoted from is correct, and founded in reason and supported by the weight of authority. So that we must conclude that the law of our own State furnishes appellant with ample power to secure the rights asked for in the complaint, and that the right given under the federal statute, when aided by a state law conferring the right of eminent domain, is ample for the purpose of securing the right herein petitioned for.

The judgment of the trial court is reversed, and cause remanded, with instructions to proceed in accordance with this opinion.