PACIFIC POSTAL TELEGRAPH–CABLE CO v. OREGON & C. R. CO. et al.

(Circuit Court, D. Oregon. September 2, 1908.)

No. 3,204.

1. EMINENT DOMAIN—CONSTRUCTION OF STATUTE—"LAND."

In the eminent domain statute of Oregon, which authorizes certain classes of public service corporations to condemn land for their use, the word "land" is comprehensive, and includes any interest in land, and under it an easement or right of way may be condemned.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, § 104.

For other definitions, see Words and Phrases, vol. 5, pp. 3975–3984; vol. 8, pp. 7700–7701.]

2. SAME—LANDS SUBJECT TO PRIOR PUBLIC USE—TELEGRAPH COMPANIES.

Under B. & C. Comp. (Or ) §§ 5074, 5075, as amended by act Feb. 25, 1907 (Sess. Laws 1907, p. 289), and section 4750, as amended by Act Feb. 17, 1903 (Sess. Laws 1903, p. 111), which authorize telegraph companies generally to condemn lands necessary or convenient for their purposes, a telegraph company may condemn a right of way for its line over the right of way of a railroad company, also secured by condemnation under the same statutes, where the taking will not materially impair or interfere with the use of such right of way by the railroad company.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 107–120.]

On Demurrer to Complaint.

Frederick V. Holman, for plaintiff.

Dolph, Mallory, Simon & Gearin, Ben C. Dey, and Wm. D. Fenton, for defendants.

WOLVERTON, District Judge. The defendant Oregon & California Railroad Company is the owner of an easement or right of way, 100 feet in width, more or less, upon which its line of railroad is constructed running from Portland, in Multnomah county, Or., in a southerly direction to the south boundary of the state, a distance of 366.61 miles; such road being now in operation. Plaintiff is a corporation having its principal place of business in the city of New York, state of New York, and is engaged in the construction, maintenance, and operation of electric telegraph lines through various parts of the United States. It is alleged that, within the scope of its purposes, it is necessary for the plaintiff to construct, maintain, and operate a line of electric telegraph from Portland, in Multnomah county, Or., to and beyond the southern boundary of the state of Oregon, and that it is most convenient and practicable to construct, maintain, and operate such line upon the easement and right of way of said defendant railroad company. The proposed manner of construction is that the poles shall be erected 35 feet from the center line of the defendant's main

track wherever the width and conditions of the right of way will permit thereof, and not nearer than 15 feet therefrom, and not nearer than 15 feet from the center line between the rails of all side tracks, switches, turn-outs, etc., where the width, conditions, and location of said side tracks, etc., will allow of the same going so far; it being averred that the erection of plaintiff's said electric telegraph line as proposed "will in no way or manner interfere with the use or occupation by the defendants of the said right of way, nor will it interfere with the operation of cars or trains along the main line, side tracks, switches, turn-outs, turn-tables, spurs, etc., of the said railroad."

The complaint is tested by a demurrer, and the principal points of controversy presented are, first, whether power and authority is conferred, under the Oregon statute, upon one public service corporation having the right of eminent domain to condemn a right of way or easement over and along the priorly acquired right of way or easement of another such corporation; and, if so, second, whether an easement or right of way, being once procured, by condemnatory proceedings or otherwise, may be incumbered, through condemnatory action, with another easement or right of way, for the use and purposes of another and different public service corporation.

The authority for condemning land for use as a right of way is given to railroad corporations and to telegraph and telephone companies by virtue of sections 5074, 5075, B. & C. Comp., as amended by Act Feb. 25, 1907 (Sess. Laws 1907, p. 289), and by Act Feb. 17, 1903 (Sess. Laws 1903, p. 111), being an amendment of section 4750, B. & C. Comp. Section 5074, as amended, provides that a corporation organized for the construction of any railway shall have a right to enter upon any land between the termini thereof for the purpose of examining, locating, or surveying the line of such road, doing no unnecessary damage thereby. Section 5075 provides that any corporation mentioned in section 5074 as amended may appropriate so much of said land as may be necessary for the line of such road, not to exceed 200 feet in width. The amendatory act of 1903 provides that any corporation organized for the purpose of building, maintaining, and operating a telephone or telegraph line for the transmission of messages for hire shall have the right to enter upon lands within the state of Oregon for the purpose of examining, locating, and surveying the line thereof, doing no unnecessary damage thereby, and may appropriate and condemn such lands, not exceeding 25 feet in width, as may be necessary or convenient for such purpose. By another section, namely, section 4748, B. & C. Comp., the right and privilege is extended to any person, persons, or corporation to construct, maintain, and operate telegraph lines along the public roads, highways, and streets of the state, or across rivers or over any lands belonging to the state, free of charge, and over lands of private individuals as subsequently provided. Then follows section 4750, alluded to above, being amended as indicated. It is stoutly contended, the statute having used the word "land" or "lands," that without more it does not authorize an easement in land only to be taken and appropriated for railroad or telegraph purposes; or, in other words, that, an easement or right of way

having once been acquired for one purpose, the statute by intendment does not grant the right or privilege of condemning it for any other purpose. Condemnatory proceedings by a railroad or telegraph company for the purpose of appropriating land to its use result ordinarily in an appropriation of an easement only; for, when the use lapses, the easement reverts to the original holder of the land. It has been held by the Oregon Supreme Court that:

"A title that may be freed from public use cannot be acquired by a private corporation by eminent domain. So land can only be taken for the particular use for which it is sought to be appropriated; * * * that is, in this case, for the purpose of a railway, an easement was all that was called for, and all that the respondent could acquire." O. R. & N. Co. v. Oregon Real Estate Co., 10 Or. 444.

So that, in legal contemplation, the railway or telegraph company by an appropriation under the statute does not obtain a title to the land as land, but an easement only in the land, and whenever the use ceases the easement reverts. But, however this may be, it seems that the term "land" is comprehensive enough to include an easement in land. The term "land" being of broader significance, must necessarily include the lesser estate.

Mr. Lewis, in his work on Eminent Domain, § 285, says:

"The term 'land' in statutes conferring power to condemn is to be taken in its legal sense, and includes both the soil and buildings and other structures on it, and any and all interest therein. An easement merely may be taken under authority to take land."

In the case of State ex rel. N. H. & D. R. Company v. Railroad Commissioners, 56 Conn. 308, 15 Atl. 756, it is said that:

"The word 'lands' is comprehensive, and may include everything that may be classed as real estate. A highway or street is a public easement in land. It attaches to it, and cannot exist separated from it, so that it is, in fact, a part of the realty. When the statute authorizes the taking of land, unless there is something indicating a contrary intent, it authorizes the taking of all the incidents and appurtenances of land. * * * When the statute uses the word 'land' in granting to a railway a power to exercise the right of eminent domain, it will be presumed to use it in its comprehensive sense as including all interests attached to it or growing out of it."

So in a case from Pennsylvania—Philadelphia, etc., Railroad Company v. Williams, 54 Pa. 103—the court says:

"It is argued, also, that the charter authorizes the taking of land only which is corporeal, and not a right of way which is incorporeal. This refinement is too subtle for our comprehension. It is difficult to understand how a right to enter upon land and locate and construct a railroad thereupon can be arrested by the existence of an incorporeal hereditament issuing or served out of it. One would suppose that in taking the land the way itself is taken. 'Omne majus continet in se minus' seems to forbid any other conclusion. If the land itself which supports the way can be taken, I can see no reason why its incident, the right of way over it, is not equally affected by the same taking for the use of the public."

When, therefore, the statute gives authority for taking land, it carries with it by necessary implication the authority to take any less interest or estate in the land in the same way and to like effect as the land itself may be taken.

Counsel cite in support of their contention the case of Matter of Boston & Albany Railroad Company, 53 N. Y. 574, Inhabitants of Springfield v. Connecticut River Railroad Company, 4 Cush. (Mass.) 63, State, Mayor, and Aldermen of Jersey City v. Montclair Railroad Company, 35 N. J. Law, 328, and some others analogous thereto; but it does not seem to me that they are to the purpose. The first case is one where a railroad company sought to condemn a public park, which had been donated to the public by the person dedicating the village, and it was there held that the statute granting power to acquire title to "any real estate required for the purposes of the corporation" was not broad enough to authorize the taking of public grounds held by the municipality for public purposes and not in its private capacity. The next case involved the attempted condemnation of a public highway for railroad purposes, and it was determined upon the same principle as the preceding case. The last case was for the condemnation of a portion of a reservoir, the public property of and in use by Jersey City, a municipality, and was decided the same way; the court saying:

"The presumption is in favor of the public, and against the necessity of taking the highway longitudinally by a private corporation, although for a public purpose such as a railroad. * * * In a highway the public have only an easement. In this [the reservoir] they own the fee, and it is devoted to a most important public use. It is like the courthouse ground in a county; and to take them would require an express indication of the Legislature or an implication equally conclusive. But, applying the rule in relation to highways in its most liberal sense, the company cannot take the strip in question."

The use for railroad purposes was so inherently inconsistent with the public use to which the lands had been devoted in these cases that it was deemed essential that there should be clear statutory authority for appropriation to the former use before such a power could be exercised as against the public. The case of Minneapolis W. Railway Company v. Minneapolis & St. L. Railway Company, 61 Minn. 502, 63 N. W. 1035, merely decides that, when property has already been appropriated for public use in a lawful and proper exercise of the power of eminent domain, it cannot be taken for another public use which will thereby wholly or to an appreciable extent defeat the former use, unless the power to make such second appropriation is expressly granted or arises from necessary implication. It is clear that section 4748, B. & C. Comp., is not adequate by its terms and conditions to authorize the condemnation of one right of way by another company for other purposes. The case of New York City & Northern Railway Company v. Central Union Telegraph Company, 21 Hun (N. Y.) 261, is authority for this construction.

I conclude, therefore, that counsel's first contention is not maintainable as a legal proposition, and that the use of the term "land" or "lands" by the statute is not inhibitive of a condemnation of the right of way or easement in land; but, upon the other hand, that the statute authorizes a condemnation, not only of land, but also of any lesser estate or interest therein.

The second question, I take it, must also be resolved in the affirmative. Starting with the general statutory authority conferred by legis-

lative enactment as previously indicated, the rule seems to be very well stated in 15 Cyc. p. 616, as follows:

"In the absence of some statutory provision expressly or by implication forbidding it, property devoted to one public use may under general statutory authority be taken for another public use, where the taking will not materially impair or interfere with or is not inconsistent with the use already existing, and is not detrimental to the public. It is not material that some inconvenience may result to the prior occupant, if the conditions are such that the two uses can stand together. The rule that power must be conferred expressly or by necessary implication applies only where the second use will destroy or injure the use to which the land was originally appropriated."

Mr. Cook states the rule thus:

"Where one corporation has taken land or property under the power of eminent domain, or holds such land or property for public use, another corporation cannot take such land or property under the power of eminent domain unless the statute expressly or by necessary implication authorizes the latter corporation to do so. * * * Subject to the above rules, the right of eminent domain may be exercised over land already owned by corporations which have acquired it by the same power." 3 Cook on Corporations (5th Ed.) § 906.

In a subsequent section (934) the same author has this to say:

"But, where the statutes of the state merely authorize telegraph companies to condemn generally, without giving expressly and distinctly the right to condemn railroad property for such telegraph right of way, there is more doubt. The tendency is to sustain such a condemnation. It has been very recently held that, even though the statutes of the state do not expressly authorize a telegraph company to condemn a right of way on a railroad right of way, yet, if the statutes authorize a telegraph company to condemn generally, this, together with the post road act of Congress which the telegraph company has accepted, is sufficient to authorize a condemnation on a railroad right of way; it being shown that the railroad business is not interfered with thereby."

As bearing upon the exact question presented by the record here, the law is further enunciated in 15 Cyc. p. 625, as follows:

"It is very generally held that a telegraph company may condemn for the construction of its line a right of way which has been previously condemned by a railroad company for its right of way, where the construction and operation of the telegraph line will not destroy or materially interfere with the use of the way for the railroad. If the use by the railroad company is not materially interfered with or destroyed, this power may be exercised under a general statutory authority to condemn land."

These general rules would seem to be conclusive of the question in hand, but a reference to the adjudications will be instructive. Almost the exact case is disposed of by the Court of Appeals in this circuit in Oregon Short Line R. Co. v. Postal Tel. Cable Co., 111 Fed. 842, 49 C. C. A. 663. The case was appealed from the Idaho district. The statute of that state (section 5213, Rev. St. 1887) confers the authority to condemn for a public use, provided it be shown, first, that the taking is necessary for such use; and, second, if already appropriated to some public use, that the use to which it is sought further to have it applied is a "more necessary public use." But it was held that the statutory provision imported nothing into the law beyond what was required by the general rules applying to the subject. As the case is so nearly in point, I may be pardoned if I quote extensively from the

opinion of the learned judge who announced the decision of the court. He says:

"It is said that the court erred in ruling that property already condemned to a public use under the right of eminent domain cannot, in the absence of express legislative authority, be condemned to a second public use; that the judgment in the first condemnation proceeding is an adjudication of the question of the necessity of that use, and that no second judgment can be had subversive of the judgment so rendered. * * * But, by section 5210, telegraph companies are given the authority to exercise the right of eminent domain. This provision, standing alone, unaffected by other statutory enactments, would confer upon a telegraph company the authority to condemn a right of way along and upon the right of way of a railway company, provided that it did not in any way interfere with the use to which the right of way was already dedicated. The rule is supported by abundant authority, and may be thus expressed: Property dedicated to a public use cannot be taken for another public use under the general laws conferring the right of eminent domain, where the second use will destroy or injure the use to which the property is already devoted. To authorize a second condemnation of such properties to a second use which is subversive of the first, there must be express legislative authority."

Then, after citing authorities and construing section 5213, supra, as above indicated, he continues:

"A corporation in instituting condemnation proceedings has the general right to select such property as it shall find necessary for its public use. This right is recognized by the courts. No one can defend against such an appropriation by showing that some other property would serve the use of the corporation equally well. Such property is 'necessary' when the corporation asserts that it has placed its line over it and needs it. Property already dedicated to a public use stands upon the same footing as other property, and is subject to condemnation as is other property, provided that the second use shall not interfere with the first. The defendant in error in this case has alleged that this property is necessary for its use, and that it is not necessary for the use of the plaintiff in error. The court has found that these allegations are true, and has found that the second use is more necessary than the first. As we construe the statutes of Idaho, we find no error in that conclusion." ·

The same result was arrived at in the Montana district, under a statute of similar provisions to the Idaho statute. Postal Tel. Cable Co. v. Oregon Short Line R. Co. (C. C.) 114 Fed. 787. The state courts announce a like doctrine. In Postal Telegraph Cable Company of Indiana v. Chicago, I. & L. Railway Company, 30 Ind. App. 654; 66 N. E. 919, 921, decided by the appellate court of Indiana, the court, after citing numerous authorities, among them the case decided by the federal Circuit Court of Appeals, supra, says:

"These authorities, together with the recent cases in our own state, we think squarely hold that under the general grant of authority to condemn given to telegraph companies, such as is given in this state, the telegraph company may show the nature of the two uses, together with any facts which show that the two uses may coexist—the latter use without materially interfering with or impairing the first use—and, if the court upon all the facts finds that the two uses can coexist, it is the duty of the court to hold that the condemnation may be had under the general grant for the purpose."

To the same purpose are the cases of Postal Tel. Cable Co. v. Oregon S. L. R. Co., 23 Utah, 474, 65 Pac. 735, 90 Am. St. Rep. 705, and Mobile & Ohio Railroad Co. v. Postal Telegraph Cable Co., 120 Ala. 21, 24 South. 408. These and other authorities lead me firmly to the

conclusion that under general law, coupled with statutory authority for the exercise of the right of eminent domain, property devoted to one public use through quasi-public concerns may be taken for another public use for like concerns, where the taking will not materially impair or interfere with, or is not inconsistent with, the use already acquired, and is not detrimental to the public. The prime essential is that the two uses may stand together, and it is not of vital consequence that some inconvenience may result to the prior occupant, so that the later suitor does not interpose in such a manner as to materially interfere with the practical use of the antecedent franchise.

The allegations of the complaint bring the plaintiff fairly within this rule, and hence it results that the demurrer should be overruled; and it is so ordered.